BERG-ZIMMER & ASSOCIATES, INC., a
Wisconsin corporation, Plaintiff-Appellant,

v.

CENTRAL MANUFACTURING CORPORATION,
Defendant-Respondent.

Court of Appeals

*No. 87-0822. Submitted on briefs November 1, 1988.—Decided
December 21, 1988.*

(Also reported in 434 N.W.2d 834.)

For the plaintiff-appellant the cause was submitted on the briefs of *Ferr, Gumina and Brejcha* by *Ronald J. Brejcha,* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Quarles & Brady* by *Michael H. Schaalman,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Berg-Zimmer & Associates, Inc. (Berg-Zimmer) appeals from a judgment awarding it

$2,540 on its complaint for breach of contract and awarding Central Manufacturing Corporation (Central) $28,463.10 on its counterclaim.[1] We conclude that the trial court's findings with respect to the $2,540 are not clearly erroneous and affirm. We also conclude that the trial court abused its discretion when it admitted documentary evidence that was hearsay. We reverse Central's award and order its counterclaim remanded for further proceedings.

The facts are largely undisputed. The principal area of disagreement is the intent of the parties gleaned from their writings and conduct. On March 8, 1983, Berg-Zimmer, an engineering and consulting firm, entered into a contract with Central, a metal fabrication company, to provide shop drawings and designs for the Mitchell Field expansion project. Central was the fabricator subcontractor for Zalk Joseph, the primary structural steel fabricator for the project. Central contended in the trial court, as it does on appeal, that it agreed to pay a maximum of $7,680 for forty drawings, and that subsequently the contract was modified to provide for a maximum of $9,180 because Berg-Zimmer had completed eleven additional shop drawings. Berg-Zimmer has taken the position that the agreement provided a $17.50 charge per hour for work done on the drawings.

A bench trial was held from January 14 to 16, 1987. Central filed a post-trial amended counterclaim on

[1]Central was awarded a judgment of $28,463.10. Against this was set off Berg-Zimmer's award on its complaint: $50 due on the contract as modified; $360 for revisions of the shop drawings paid by the general contractor to Central which agreed to pay it to Berg-Zimmer; and $2,130 stipulated by the parties before trial due on the Houston and Jones Island projects not involved here. Therefore, Central was awarded a total of $25,923.10.

January 22, 1987, which alleged negligence and breach of contract by Berg-Zimmer in that the shop drawings failed to conform to the specifications provided by Central. After reviewing the shop drawings, Central fabricated the steel pieces in conformity with the shop drawings. When Central's erecting subcontractor, Syphax Steel Corporation (Syphax), attempted to place the steel plates, they did not fit and required refabrication. Syphax charged Central more than $28,000 for the additional work. Berg-Zimmer denied any negligence or breach of contract.

The trial court made the following findings:

(1) Central and Berg-Zimmer had agreed to contract for up to forty drawings at a maximum price of $7,680, and not at an hourly rate of $17.50;

(2) Both parties agreed to modify the contract to provide for a maximum payment of $9,180 for the additional eleven shop drawings;

(3) Central only had to pay for shop drawing revisions that the project architects approved, which totaled $360; and

(4) Berg-Zimmer had breached the contract and was negligent in its failure to prepare accurate shop drawings.

Construction of a written contract is normally a question of law and is therefore reviewed independently. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369, 373–74 (1987). However, if an ambiguity exists which requires resort to extrinsic evidence for resolution, an issue of fact is presented. *Id.* at 115 n. 8, 399 N.W.2d at 374 n. 8. We affirm a trial court's fact-findings unless they are clearly erroneous. Sec.

805.17(2), Stats; *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). In this case, the trial court used extrinsic evidence to resolve the ambiguity concerning the price of the drawings and whether the parties agreed to a modification of the contract. We conclude that the contract was ambiguous and therefore an issue of fact is presented.

The parties agree that Berg-Zimmer hand-delivered an offer to Central on March 8, 1983. Berg-Zimmer offered to do thirty-seven to forty drawings and designs at "$17.50 per hour base" and "Rework—$17.50 per hour." Michael Gagnon (Gagnon), a Berg-Zimmer salesperson, delivered it to George Gillis (Gillis), Central's production manager, in Gillis' office. Due to budget constraints, Gillis agreed to pay a maximum of $7,680 for forty drawings. Gillis calculated thirty-two heavy sheet drawings at $200 each and eight light sheet drawings at $160 each.[2] Gillis then took the offer to Central's president, Irvin Palmer (Palmer), who approved the offer. Gillis returned to Gagnon, who agreed to the $7,680 figure. Gillis and Gagnon then discussed the matter of corrections.

Berg-Zimmer presented evidence that the contract was for a flat $17.50 per hour. Specifically, Berg-Zimmer's invoices to Central were based on an hourly rate, and Central paid the invoices. However, on September 28, 1983, Central forwarded a debit memorandum to Berg-Zimmer stating its invoices exceeded the $7,680 contract price by $1,358.75.

We conclude that the evidence conflicted on the matter of the contract price. The trial court's finding that the contract price was for $7,680 is supported by

[2]Gillis wrote: "MAX $7680" on the offer.

credible evidence and is not clearly erroneous. *See* sec. 805.17(2), Stats.

The trial court also found that the parties modified the contract in November of 1983. Berg-Zimmer asserts that the fact that it continued sending invoices to Central after November at the hourly rate proves it never agreed to any modification.

It is without dispute that in November of 1983, Gillis, Palmer and Russell Berg (Berg), president of Berg-Zimmer, discussed a revised contract price because Berg-Zimmer had completed eleven additional shop drawings. The evidence clearly proves that the parties determined upon a new price of $9,180 as a result of compromise, and that it was arrived at by multiplying fifty-one drawings by $180, the price per drawing.[3]

■

During the November meeting, Palmer wrote notes on the March 8, 1983 document from Berg-Zimmer, and in the presence of Gillis and Berg, Palmer wrote "51 shts @ 180 =$9180.00, 11-17-83, IRV RUS GEO." On December 8, 1983, Central forwarded a purchase order to Berg-Zimmer confirming the $9,180 price. Berg conceded in a deposition, and at trial, that the invoice was his "potential understanding." Berg-Zimmer did not send additional invoices to Central after December 8, nor did it notify Central that it would not accept the modification. Based upon the November agreement, Berg-Zimmer's failure to object to the December 8 purchase order, and all surrounding circumstances, the trial court found that Berg-Zimmer had accepted the

---

[3]The price of $180 was agreed upon by the parties because they could not determine whether the additional eleven drawings were on light or heavy sheets. The two prices were averaged for a total of $180.

modification. We uphold the findings of the trial court in this conflicting fact scenario because they are not clearly erroneous and because it was the particular duty of the court to evaluate the credibility of witnesses. *See* sec. 805.17(2), Stats. A modified contract need not be supported by new consideration and may be manifested by the actions of the parties. *See Smith v. Osborn,* 66 Wis. 2d 264, 277, 223 N.W.2d 913, 919 (1974). Therefore, we conclude that the parties agreed to the modification.

## CENTRAL'S COUNTERCLAIM

The trial court, over Berg-Zimmer's hearsay objection, admitted exhibit 24 into evidence. It established the court's award of damages on the counterclaim. We conclude that the trial court improperly admitted the exhibit because a proper foundation under 908.03(6), Stats., was not laid, and therefore, the damage award is unsubstantiated and must be reversed and remanded for further proceedings.

Syphax refabricated and installed steel pieces in the project from drawings that Berg-Zimmer allegedly detailed incorrectly. For this work, Syphax billed Central a total of $44,212.70, of which $28,436.10 related to shop drawing detail errors.[4] Central paid Syphax. The trial court granted Central judgment on this amount, subject to setoffs detailed hereinbefore.

Exhibit 24 consists of 56 sheets of paper, including invoices for work performed together with supporting time and materials documentation. They were signed by Norman Ball (Ball), Syphax's steel erection foreman, and they contained numerous and extensive

---

[4]The remaining $15,776.60 accounted for work done by Syphax, due to fabricating errors by Central.

348

handwritten entries and statements concerning the work.[5]

The trial court held that exhibit 24 was excepted from the hearsay rule under sec. 908.03(6), Stats., which provides:

> RECORDS OF REGULARLY CONDUCTED ACTIVITY. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

Based on the testimony of Gillis, Central's production manager of the Mitchell Field expansion project, the court found him to be an "other qualified witness" under subs. (6). Conceding that Gillis was not a custodian of Syphax's records, the court reasoned that because exhibit 24 was a business record or a record of Syphax's regularly conducted activity, it qualified under subs. (6).

The trial court was vested with broad discretion in determining the admission of evidence. *Badger Produce Co. v. Prelude Foods Int'l, Inc.,* 130 Wis. 2d 230, 235, 387 N.W.2d 98, 101 (Ct. App. 1986). On review, we determine whether the trial court exercised its discretion in accordance with accepted legal standards and the facts of record. *Christensen v. Economy Fire & Casualty Co.,*

---

[5]For example, page two of the exhibit contains an entry, *inter alia:* "We had to fabricate the floor hatch frames that were between column lines 18.6–10.7 and C.3–F on sheet 41."

77 Wis. 2d 50, 55–56, 252 N.W.2d 81, 84 (1977). If a reasonable basis for the trial court's exercise of discretion is manifest, we will not find an abuse of discretion. *Id.* Commission of an error of law is an abuse of discretion.

The trial court erred in concluding that Gillis was a witness qualified to lay the foundation for Syphax's invoices and supporting documents. He was in no position to testify about the origin of the entries or their correctness. Gillis merely examined the invoices and memoranda, separated charges for detail errors from other items, and added the totals of the segregated items. The following colloquy from the direct examination of Gillis illustrates his lack of qualification to testify concerning Syphax's records:

> Q. Now, how did you get to the back charges for Berg-Zimmer of three thousand six hundred ninety-four dollars and three cents?
>
> A. By going through each of the individual time sheets that back up the invoice, calculating out hours and equipment charges which were due to detail errors, calculating out hours and equipment charges which were due to other causes, and then adding up the calculations.

The record is devoid of any evidence establishing Gillis' qualifications to lay a proper foundation for the admissibility of Syphax's records. He did not possess knowledge to testify concerning the contemporaneousness of the entries, by whom they were transmitted or whether they were made in the course of a regularly conducted activity.[6] *See* sec. 908.03(6), Stats. That he had posses-

---

[6]*See* Wisconsin Rules of Evidence, 59 Wis. 2d R271, the Judicial Council Committee's Note—1974 states that the entry

sion of the records, understood their contents and recommended Central's payment, cannot bootstrap Gillis into the position of a qualified witness under subs. (6).

Central relies upon *Town of Fifield v. State Farm Mut. Auto. Ins. Co.*, 120 Wis. 2d 227, 353 N.W.2d 788 (1984). In the case, the town sought recovery from its insurer, State Farm, for damage to a town bridge. The town chairperson testified from a summary of invoices compiled by the town clerk establishing the cost of repair. The supreme court upheld use of the summary under sec. 908.03(6), Stats., because it was collated from invoices entered by the clerk in town records in accordance with his usual practice. *Id.* at 229-30, 353 N.W.2d at 789. As town chairperson, the witness was qualified to testify that the record was made in the course of a regularly conducted activity. Unlike the town chairperson in *State Farm,* there is no evidence that Gillis had personal knowledge about the Syphax documents. Gillis was testifying about documents given to him by a third party. We conclude that *Fifield* does not control this case.[7]

We also conclude that because no custodian or other qualified person testified about the invoices and

must be based on information transmitted to the recorder by one with first-hand knowledge who has a duty to know and report the information.

[7]Central also relies on *Coryell v. Bluett,* 251 Wis. 458, 464-65, 29 N.W.2d 741, 744 (1947), for the proposition that Gillis laid the proper foundation for the admissibility of the Syphax documents. In *Coryell,* the plaintiff testified about a daybook that was kept by his wife. It contained listings of all services and materials furnished by their business. The plaintiff was qualified to testify about the daybook because the entries were made on a daily basis by his wife based on information he gave her. This case is equally unpersuasive.

supporting documents prepared by Syphax, as required by sec. 908.03(6), Stats., the trial court abused its discretion by admitting them into evidence. Since there is no other credible evidence of damages, Central's counterclaim award must be reversed and remanded for further proceedings, to give Central the opportunity to lay a proper foundation for the admission of the Syphax documents.

In summary, we affirm the trial court's finding that the contract and modification were for a maximum price. Berg-Zimmer is entitled to the $50 balance due upon the contract. It shall also recover $360 for the revisions and $2,130 for the other jobs. However, Central's counterclaim must be reversed and remanded.

*By the Court.*—Judgment reversed in part, affirmed in part and cause remanded with directions.