2017 OK CIV APP 62

**Jorge Antonio Cardenas NAJERA, Plaintiff/Appellee,**

v.

**DAVID STANLEY CHEVROLET, INC., Defendant/Appellant.**

**Case Number: 115522**
**Companion w/115513; 115515; 115565; 115581; 115819; 115922**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 10/25/2017

Mandate Issued: 11/21/2017

---

R. Scott Adams, Robert W. Gray, ADAMS & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee

Bart Jay Robey, CHUBBUCK DUNCAN & ROBEY, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 David Stanley Chevrolet, Inc. (DSC) appeals from the trial court's Order denying its motion to compel arbitration. Based on our review, we reverse and remand for further proceedings.

## BACKGROUND

¶2 In 2014, Jorge Antonio Cardenas Najera purchased three Chevrolet trucks from DSC, the first on January 13, the second on February 3, and the third on October 1. In July 2015, DSC repossessed the three trucks on the purported basis that Najera provided an incorrect Social Security Number. However, in Najera's petition he alleges that because he is in the process of establishing citizenship he provided "his individual taxpayer identification number" on the appropriate documents, received title to the vehicles, and timely made every installment payment. He alleges, among other things, that "[DSC] or its assign(s) ... wrongfully affixed the false Social Security Number to the forms[.]" Various theories are set forth in his petition against DSC, including breach of contract, conversion, and fraud.

¶3 DSC filed a motion to compel arbitration, pointing out that, "in the course of purchasing" each vehicle, "[Najera] signed and agreed to several documents," including a Purchase Agreement "contain[ing] a Dispute Resolution Clause requiring [Najera] and [DSC] to submit disputes ... to binding arbitration pursuant to the Federal Arbitration Act." DSC attached copies of the Purchase Agreements to its motion. The parties signed these agreements on the dates of the three sales, respectively. The dispute resolution clause is in red ink on the first page of each Purchase Agreement, is specifically

signed by Najera and DSC, and provides, in part, as follows:

This Dispute Resolution Clause applies to any controversy, claim or dispute between the Purchaser and the Dealer arising out of, or related to this sale or transaction, including, but not limited to any and all issues or disputes arising as a result of this sale or transaction, whether said issues arise prior to, during or subsequent to the sale or attempted sale of a vehicle and whether said sale or attempted sale is a cash sale or is based upon financing or extended credit, or arises as a result of any financing contract, agreement or sales document related to the sale or attempted sale of a vehicle. The Purchaser and Dealer agree that all matters addressed within this Clause shall be submitted to binding arbitration, with an Arbitration Service or Arbitrator of the parties' choosing, pursuant to the Federal Arbitration Act, Title 9 U.S.C. § 1, et seq.

¶ 4 However, in Najera's response to the motion to compel, he asserts that "there was no assent by [Najera] to an arbitration clause,", that his signature was fraudulently induced, that the arbitration agreement is unconscionable, and that there was no "meeting of the minds" as to arbitration.

¶ 5 In addition, in Najera's supplemental response, he asserts he executed a Retail Installment Sale Contract (RISC) at the time he purchased each vehicle. He asserts that the RISCs, which do not contain an arbitration clause, constitute the complete contract of the parties for each transaction because the RISCs each contain the following clause, which Najera refers to as a "merger clause":

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.

Najera further relies on the following language also contained in the RISCs:

You, the Buyer ... may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller ... the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below.

¶ 6 Najera specifically focuses on the following language from the above-quoted clauses of the RISCs: "This contract contains the entire agreement" between the parties and, "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract." Based on this language in the RISCs, Najera asserts "[t]he clear and unambiguous language of the RISC establishes the intent of the parties to purchase and sell [each] vehicle exclusively under the terms of the RISC, and not to proceed under the terms of the purchase agreement."

¶ 7 A hearing was subsequently held in the proceedings below on the issue of whether the RISCs constitute the entire and exclusive agreement of the parties. At the end of this hearing the trial court explained from the bench that, based on the above-quoted language in the RISCs, the RISCs do constitute the only contracts in this case. Because the RISCs do not contain an arbitration clause, the trial court denied the motion to compel arbitration and stated that the case then proceeds in the trial court. The court also explained that it was not addressing any other basis for denying the motion to compel, such as unconscionability, but was "basing [the denial] simply on this legal position that I'm taking."

¶ 8 The trial court's decision denying DSC's motion to compel arbitration was memorialized in an Order filed in October 2016. DSC appeals.

## STANDARD OF REVIEW

¶ 9 As previously set forth by a separate division of this Court:

An order denying a motion to compel arbitration is an interlocutory order appealable by right, which we review *de novo*. *See* 12 O.S. [2011] § 1879(A)(1); *see also Thompson v. Bar-S Foods Co.*, 2007 OK 75, ¶ 9, 174 P.3d 567, 572. "The interpretation of an arbitration agreement is governed by general state-law principles of contract interpretation." *Bar-S Foods*, ¶ 18 ....

In seeking to compel arbitration, a party "must present a statement of the law and facts showing an enforceable agreement to arbitrate the issues presented by the petition." *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 16, 138 P.3d 826, 830. In determining whether "the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit the particular dispute to arbitration." *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 22, 160 P.3d 936, 944–45. *High Sierra Energy, L.P. v. Hull*, 2010 OK CIV APP 96, ¶¶ 9–10, 241 P.3d 1139, *cert. denied.*

## ANALYSIS

¶ 10 The parties do not dispute that, for each of the three vehicle purchases at issue in this case, the Purchase Agreement and RISC were executed on the same date as part of the same transaction. Moreover, the Purchase Agreements in the present case provide as follows:

12. This Purchase Agreement and all written contracts relating to the same transaction as evidenced on the front of this Purchase Agreement, between the same parties, and made as part of substantially the same transaction as evidenced on the front of this Purchase Agreement *shall be taken together and read as one document setting forth the terms of the parties agreement.* To the extent that any of the terms among the various documents are inconsistent, the financing agreement [i.e., the RISC] shall supersede any directly conflicting rights, language or terms.

(Emphasis added.)

¶ 11 Najera acknowledges the existence of this language in the Purchase Agreement, but asserts that the last sentence of this clause means "that the RISC controls" because the "Purchase Agreement contains a material term contradicting DSC's extension of credit to Najera[.]" However, Najera misreads the above-quoted language. *See* 15 O.S. 2011 § 155 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."). In providing in the last sentence of the above-quoted clause of the Purchase Agreement that, "[t]o the extent that any of the terms among the various documents are inconsistent, the financing agreement shall supersede any directly conflicting rights, language or terms," the only reasonable interpretation is that only inconsistent terms—terms which directly conflict with rights, language or terms in the RISC—are to be superseded by the RISC. However, the RISCs do not contain any terms regarding dispute resolution and, thus, the dispute resolution clause in the Purchase Agreement is not inconsistent or in conflict with any terms in the RISC.

¶ 12 By contrast, in *Arizon Structures Worldwide, LLC v. Global Blue Technologies–Cameron, LLC*, 481 S.W.3d 542 (Mo. Ct. App. 2015), the two documents in question executed by the buyers and sellers "contained contradictory and mutually exclusive provisions" regarding dispute resolution. The court explained,

A court cannot simultaneously give effect to an arbitration agreement stating that "any dispute . . . shall be . . . resolved by binding Arbitration" . . . and a contractual provision requiring "[a]ny controversy or claim . . . be settled exclusively in St. Louis County Missouri Circuit Court[.]"

*Id.* at 548. The court further explained that the two documents were not signed contemporaneously; rather, thirteen days separated their execution.

¶ 13 For these reasons, among others, the Missouri Court of Appeals in *Arizon Structures* distinguished its facts from those confronted by the Supreme Court of Missouri in *Johnson ex rel. Johnson v. JF Enterprises, LLC*, 400 S.W.3d 763 (Mo. 2013) (en banc). In *Johnson*, despite the car buyer signing a financing agreement which contained a merger clause, the court concluded a separate arbitration agreement signed by the car buyer at the same time was enforceable. The *Johnson* Court reasoned that the agreements signed by the car buyer and dealer were not only signed contemporaneously, but could be

readily harmonized. The court observed that the merger clause did not explicitly state that it functions to exclude contemporaneously signed documents that were part of the same transaction, and further observed that

> [a]n arbitration agreement is not an agreement to loan money, extend credit or forbear from enforcing repayment or promise to extend or renew debt. It is a dispute resolution clause. ... By its terms, the arbitration clause applies to disputes of all types, including those over financing. This does not make it a financing clause, but it does mean that disputes over financing must proceed to arbitration if the arbitration clause is enforceable.

*Id.* at 768. The court then concluded as follows: "In this case, the intent of the parties is demonstrated by all the documents the parties signed contemporaneously. To protect the sanctity of the parties' written contract, all the provisions in the writings can and should be harmonized and given effect, including a valid arbitration agreement." *Id.* at 769 (citation omitted).

¶ 14 Unlike *Arizon Structures*, but similar to *Johnson*, the Purchase Agreements and RISCs in the present case do not contain contradictory or mutually exclusive provisions regarding dispute resolution, and the agreements were signed on the same date for each purchase. The *Johnson* Court explained that, in Missouri, "when several instruments relating to the same subject are executed at the same time," "*the documents will be construed together,* even in the absence of explicit incorporation, unless 'the realities of the situation' indicate that the parties did not so intend." 400 S.W.3d at 767 (citations omitted). Similarly, by statute in Oklahoma, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." 15 O.S. 2011 § 158. *See also Sullivan v. Gray*, 1938 OK 183, ¶ 7, 182 Okla. 487, 78 P.2d 688 ("The intention of the parties must be deduced from the entire agreement, and every provision must be con-

strued so as to be consistent with each other and that construction adopted which, if possible, gives effect to every part of the contract.").

¶ 15 As quoted above, the arbitration clause in the present case applies to all disputes between Najera and DSC, "whether said sale or attempted sale is a cash sale or is based upon financing or extended credit, or arises as a result of any financing contract, agreement or sales document related to the sale or attempted sale of a vehicle." Moreover, the purported merger clause in the RISC is merely entitled "HOW THIS CONTRACT CAN BE CHANGED," and provides, in pertinent part, that "[t]his contract contains the entire agreement between you and us relating to this contract." The words "this contract" in the RISC's merger clause plainly refer to the RISC alone. Importantly, the merger clause does not merely state that "[t]his contract contains the entire agreement between you and us"; rather, it provides that "[t]his contract contains the entire agreement between you and us relating to this contract," i.e., relating to the RISC. It then provides that "[a]ny change to this contract [i.e., to the RISC] must be in writing and we must sign it."

¶ 16 Similar circumstances were also confronted, and Oklahoma law was applied, by the United States Court of Appeals for the Tenth Circuit in *Mooneyham v. BRSI, LLC*, 682 Fed.Appx. 655 (10th Cir. 2017).[1] There the buyers purchased a used car from the dealer, they executed a purchase agreement, and, because financing was required, they executed a retail installment sale contract (referred to, as in the present case, as "the RISC" by the *Mooneyham* Court). As in the present case, the parties in *Mooneyham* also signed various other agreements, including an agreement to arbitrate any disputes between them. Pertinent to the present appeal, the *Mooneyham* Court observed that (1) "[o]n its face," the arbitration agreement constitutes a "comprehensive provision [that]

---

**1.** *Mooneyham* was issued subsequent to the filing of the parties' appellate briefs in this case. Soon after *Mooneyham* was issued, DSC filed a "Suggestion to the Court," attaching a copy of *Mooneyham* and asserting it "is probative of the

issues involved herein[.]" We note that although, as stated in *Mooneyham*, the opinion is not "binding precedent," "it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1." *Mooneyham*, 682 Fed.Appx. at 656.

appears to cover each of [the buyers'] claims"; (2) "[t]he parties' conduct, and the[ ] documents they executed, evince a single transaction" despite "occurring over two days"; (3) the purported merger clause in the retail installment sale contract—which states, as in the present case, that "[t]his contract contains the entire agreement between you and us relating to this contract"—"applies only to the RISC itself—that is, the clause precludes incorporation of other agreements into the RISC," but "the clause doesn't preclude incorporation of other agreements into the transaction as a whole";[2] (4) "under Oklahoma law, the RISC can't be read in a vacuum"; and (5) although the RISC does not expressly incorporate the other agreements, "that omission doesn't override the intent that [the buyers] and [the dealer] clearly expressed by executing the agreements together." 682 Fed.Appx. at 659–60. Accordingly, the *Mooneyham* Court concluded that the arbitration agreement applies to the buyers' claims.

¶ 17 One further observation was made by the *Mooneyham* Court which is also compelling in the present case. The court observed that, "as a practical matter," to arrive at a contrary result would render "pointless" the execution of a certain document which the parties would then have signed

> for no reason—an interpretive result that we must avoid. *McGinnity v. Kirk*, 362 P.3d 186, 199 (Okla. 2015) ("A contract is to be construed as a whole, giving effect to

each of its parts, and not construed so as to make a provision meaningless, superfluous or of no effect." (footnote omitted)). *Mooneyham*, 682 Fed.Appx. at 661. As stated above, the parties in the present case signed numerous documents—at least some of them in compliance with state regulations—such as, as articulated by Najera in his response to the motion to compel, a "Credit Application, [an] Agreement to Purchase Insurance, ... [an] Odometer Disclosure Statement and other necessary documents ...."[3] If we were to conclude that the RISC constitutes the only and complete agreement of the parties, execution of these other documents would be rendered nugatory. Such a result would fail to effectuate the intent the parties clearly expressed by executing the various agreements together.[4]

¶ 18 Perhaps more importantly, however, the Purchase Agreement and the RISC can be readily harmonized. Paragraph 12 of the Purchase Agreement, quoted above, provides that "all written contracts relating to the same transaction ... between the same parties, and made as part of substantially the same transaction ... shall be taken together and read as one document setting forth the terms of the parties agreement." It further provides that, "[t]o the extent that any of the terms among the various documents are inconsistent, the financing agreement [i.e., the RISC] shall supersede any directly conflicting rights, language or terms." This language is entirely consistent with the language in the

---

**2.** *See also Ritter v. Grady Auto. Grp., Inc.*, 973 So.2d 1058, 1062 (Ala. 2007) (Although a merger clause creates "a *presumption* that the writing represents an integrated, that is, the final and complete, agreement of the parties," and "invokes the parol evidence rule, which precludes a court from considering extrinsic evidence of prior or contemporaneous agreements in order to change, alter, or contradict the terms of the integrated contract," "[a] merger clause ... does not bar evidence of contemporaneous collateral agreements between the parties.") (internal quotation marks omitted) (citations omitted).

**3.** Najera also states in his petition with regard to the January 2014 sale, for example, that he "signed a Purchase Agreement, a [RISC] and other documents, such as a security agreement, odometer statement, etc., with [DSC]."

**4.** Najera cites to *Walker v. BuildDirect.com Technologies Inc.*, 2015 OK 30, 349 P.3d 549, in

support of his position that the arbitration agreement in the present case is unenforceable. In *Walker*, the Oklahoma Supreme Court responded to the following certified question from the Tenth Circuit, whether "a written consumer contract for the sale of goods incorporate[s] by reference a separate document entitled 'Terms of Sale' available on the seller's website, when the contract states that it is 'subject to' the seller's 'Terms of Sale' but does not specifically reference the website[.]" *Walker*, 2015 OK 30, ¶ 1, 349 P.3d 549. The Supreme Court answered the certified question in the negative. However, the following statement by the *Mooneyham* Court is equally applicable to the present case: "[U]nlike the plaintiffs in *Walker*, [the buyer] plainly had notice of the arbitration agreement; after all, he signed it. Accordingly, *Walker* is inapplicable here." *Mooneyham*, 682 Fed.Appx. at 662.

RISC providing that "[the RISC] contains the entire agreement between you and us relating to [the RISC]. Any change to [the RISC] must be in writing and we must sign it." Both the Purchase Agreement and the RISC set forth the parties' intent that, where any inconsistency exists among the various documents with the terms of the RISC, the RISC controls as to all rights, language or terms set forth in the RISC. However, as stated above, the Purchase Agreement contains a dispute resolution clause and the RISC does not. Thus, there is no inconsistency between the Purchase Agreement and the RISC as to dispute resolution.

¶ 19 We conclude the RISC standing alone does not constitute the parties' entire agreement in this case, and Najera's claims are subject to the arbitration agreement.

¶ 20 The trial court did not address the additional theories asserted by Najera attacking the validity of the arbitration clause.[5] As stated above, the trial court explained it was not addressing any other basis for denying the motion to compel, such as the alleged unconscionability of the arbitration clause itself, but was denying the motion based solely on its interpretation of the language in the RISC. Because "it is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues," and "[a]n appellate court cannot craft an initial decision upon an *untried question* and then direct that it be followed on remand," *Evers v. FSF Overlake Assocs.*, 2003 OK 53, ¶ 18, 77 P.3d 581 (internal quotation marks omitted) (citations omitted),[6] we are unable to address, in the first instance, these additional matters. Consequently, we reverse the trial court's determinations that the RISC constitutes the parties' entire agreement and that Najera's claims are not subject to the arbitration agreement, but we remand this case to the trial court for further proceedings.

## CONCLUSION

¶ 21 We conclude the terms of the Purchase Agreements and the RISCs can be readily harmonized, especially with regard to dispute resolution. In addition, to construe the RISCs in the manner proposed by Najera would render nugatory the other documents signed by the parties on the same date and as part of the same transaction. Such a result would fail to effectuate the intent the parties clearly expressed by executing the various agreements together, including their intent to arbitrate their disputes. Consequently, we reverse the Order denying DSC's motion to compel arbitration; however, because the trial court has not yet addressed the additional issues raised in Najera's response to the motion to compel, we remand this case to the trial court for further proceedings in accordance with this Opinion.

¶ 22 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

THORNBRUGH, V.C.J., and WISEMAN, J., concur.

---

5. Of course, "it is a mainstay of the [Federal Arbitration] Act's substantive law that attacks on the validity of the contract, *as distinct from attacks on the validity of the arbitration clause itself,* are to be resolved by the arbitrator in the first instance, not by a federal or state court." *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21, 133 S.Ct. 500, 184 L.Ed.2d 328 (2012) (per curiam) (emphasis added) (internal quotation marks omitted) (citations omitted).

6. *See also State ex rel. Okla. Corp. Comm'n v. McPherson*, 2010 OK 31, ¶ 21 n.6, 232 P.3d 458 ("This Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of its appellate jurisdiction.") (citations omitted).