The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **March 20, 2024**

**No. A-1-CA-40708**

**ESPERANZA MARTINEZ, on her own behalf,**
**and on behalf of all others similarly situated,**

Plaintiff-Appellee,

v.

**GALLES CHEVROLET COMPANY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lisa C. Ortega, District Court Judge**

Feferman, Warren & Mattison
Nicholas H. Mattison
Albuquerque, NM

for Appellee

Sutin, Thayer & Browne, P.C.
Christina M. Gooch
Andrew J. Simons
Albuquerque, NM

for Appellant

Park & Associates, LLC
Alfred A. Park
Geoffrey D. White
Albuquerque, NM

Amicus Curiae for New Mexico Automotive Dealers Association

**OPINION**

**YOHALEM, Judge.**

{1}     Defendant Galles Chevrolet Company (Seller) appeals from the district court's denial of its motion to compel arbitration. *See* NMSA 1978, § 44-7A-29(a)(1) (2001) (providing for an interlocutory appeal as of right from a district court's denial of a motion to compel arbitration). Plaintiff Esperanza Martinez (Buyer) filed a class action complaint in district court alleging that Seller violated New Mexico consumer protection law by charging more than the advertised price for a vehicle that Buyer purchased from Seller. The sole issue before this Court is whether the parties entered into an enforceable arbitration agreement. In purchasing her vehicle, Buyer contemporaneously executed two contracts: a "New/Demo Vehicle Buyer's Order Agreement" (Buyer's Agreement), and a "Retail Installment Sale Contract" (RISC). Each contract included an arbitration provision. Reading the two contracts together, the district court found that the arbitration provisions in the two contracts were contradictory, there was, therefore, no meeting of the minds between the parties as to arbitration, and no enforceable agreement to arbitrate. On appeal, Seller argues that the RISC was the parties' final, integrated agreement governing the purchase of Buyer's vehicle, and claims that a merger clause in the RISC means that the RISC's arbitration provision supersedes and replaces the conflicting Buyer's Agreement arbitration provision. We conclude that the RISC is not an integrated agreement.

Under the relevant principles of New Mexico contract law, the RISC must be read together with the contemporaneously executed Buyer's Agreement. Further, because at the direction of the parties, we assume for purposes of this appeal that the two arbitration agreements materially contradict one another, we affirm the district court's denial of Seller's motion to compel arbitration.

**BACKGROUND**

{2}    On October 9, 2021, Buyer purchased a Chevrolet Trailblazer from Seller, an automobile dealership. Buyer signed two contracts at the time of purchase: the Buyer's Agreement and the RISC. Both contracts were prepared by Seller, were presented to Buyer together, and were signed at the same time. The Buyer's Agreement is the purchase agreement between Seller and Buyer. It includes a description of the vehicle, the vehicle's accompanying accessories and services the Buyer has agreed to purchase, and states the price and terms of the sale to Buyer. The RISC is the finance contract. It sets out the terms of Buyer's loan for the purchase of the vehicle, including the amount financed, interest rates, monthly payment schedules, and the statutorily required credit disclosures.

{3}    The Buyer's Agreement and the RISC each contain an arbitration provision. Each arbitration provision purports to include all disputes or claims between Seller and Buyer arising out of the transaction, and in the case of the RISC, all disputes between Buyer and a financial institution should Seller assign the RISC, as is often

2

done. The parties agree for purposes of this appeal that the two arbitration provisions contain materially contradictory terms concerning the conduct of an arbitration.

{4} Approximately two months after the purchase of her vehicle, Buyer filed a class action complaint in district court claiming that Seller misrepresented the purchase price of her vehicle, charging her more than advertised, in violation of New Mexico consumer protection law. In its answer, Seller claimed, in relevant part, that "[a]ll claims between [the parties] should be arbitrated pursuant to the terms of the [a]rbitation [p]rovision within Buyer's [s]ales [c]ontracts." Seller also filed a motion to compel arbitration.

{5} Buyer responded, noting that she had signed two contracts contemporaneously that together applied to the purchase of her vehicle, and that each contract contained an arbitration provision. Buyer argued that the arbitration provisions in the two contracts contained materially contradictory terms regarding the arbitration of any dispute between her and Seller. Buyer further claimed that because of the contradictory terms, there was no "meeting of the minds" between the parties as to arbitration and therefore, "no enforceable agreement to arbitrate."

{6} In its reply, Seller argued that a clause in the RISC entitled, "How This Contract Can Be Changed," is a merger or integration clause, which according to Seller, expresses the parties' intent that the RISC represent the "entire agreement" of the parties. Seller further claimed that because the RISC replaced and superseded

the Buyer's Agreement, the district court was required "to enforce the arbitration agreement in [the RISC] and disregard the other arbitration agreement [in the Buyer's Agreement]."

{7} The district court rejected Seller's construction of the RISC as an integrated agreement. The court applied the general rule of contract construction requiring two contracts executed contemporaneously as part of a single transaction to be construed together. The court found that the "two arbitration agreements [were] contradictory," and concluded that "[a]s a result of the contradictions, there was no meeting of the minds as to arbitration, and no enforceable arbitration agreement."

{8} Seller appealed.

**DISCUSSION**

{9} As previously noted, Seller concedes, for purposes of this appeal, that the arbitration provisions in the Buyer's Agreement and the RISC materially contradict each other. Seller also concedes, again for purposes of this appeal, that if the Buyer's Agreement and the RISC must be construed together, as a single, harmonious contract, the conflicting arbitration provisions are unenforceable. *See Ragab v. Howard*, 841 F.3d 1134, 1137-38 (10th Cir. 2016) (concluding that where arbitration provisions materially conflict, there is no agreement between the parties and arbitration cannot be compelled).

{10}     Accepting these propositions, Seller makes a single argument on appeal: the district court erred in rejecting its claim that the RISC was an integrated contract that superseded and replaced the Buyer's Agreement, resolving any conflict between the arbitration provisions in the two contracts. Seller's argument focuses on the clause in the RISC entitled, "How This Contract Can Be Changed." Seller claims that this clause is a merger clause, intended by the parties to designate the RISC as the "stand[-]alone, integrated agreement" between the parties concerning the purchase of Buyer's vehicle.

{11}     We agree with Seller that the parties can agree to a method of resolving a conflict between two contracts. *See Ragab*, 841 F.3d at 1138 ("Courts have granted motions to compel despite the existence of conflicting arbitration provisions when the contracts themselves provide the solution."). Merger or integration clauses providing that the terms of a contract are intended to govern over prior or contemporaneous contracts, and to supersede the terms of those contracts in whole or in part, can effectively resolve what would otherwise be an irreconcilable conflict and allow the arbitration provision in the integrated contract to be enforced. *See id.*

{12}     The sole issue before this Court on appeal is whether Seller and Buyer intended for the RISC to be the stand-alone, integrated contract between the parties; i.e., intended for the RISC to govern over the contemporaneously signed Buyer's

Agreement, thereby superseding and discharging the arbitration provision in the Buyer's Agreement.

## I. Standard of Review

{13} "[W]e apply a de novo standard of review to a district court's denial of a motion to compel arbitration, as well as to the applicability and construction of a contractual provision requiring arbitration." *State ex rel. Balderas v. ITT Educ. Servs., Inc.*, 2018-NMCA-044, ¶ 8, 421 P.3d 849 (alteration, internal quotation marks, and citation omitted). "We review the interpretation of any relevant contract terms de novo as well." *Id.*

## II. The Principles of Law Applicable to the Construction of the Buyer's Agreement and the RISC

{14} Arbitration provisions in a contract, and the contract provisions that impact the construction and enforceability of the arbitration provisions, must be enforced according to their terms. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 16, 150 N.M. 398, 259 P.3d 803. The terms of a contract relating to arbitration are construed according to the general principles of state contract law. *See id.* ¶ 15. "State law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Id.* ¶ 17 (text only) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)); *Richards v. Allianz Life Ins. Co. of N. Am.*, 2003-NMCA-001, ¶ 13, 133 N.M. 229, 62 P.3d 320 (providing that whether a contract is an integrated agreement

"is answered by the same analysis that applies to the enforceability of any contract"). Accordingly, an arbitration agreement is not enforceable where a contract addressing any other subject would not be enforceable under generally applicable contract law.

{15} Applying these principles of law, we turn to the general principles of New Mexico contract construction. "[T]he touchstone for interpreting a [contract]" under New Mexico law "is to ascertain and apply the intent of the parties." *Levenson v. Haynes*, 1997-NMCA-020, ¶ 13, 123 N.M. 106, 934 P.2d 300. In determining the intent of the parties, "[w]e consider the plain language of the relevant provisions, giving meaning and significance to each word or phrase within the context of the entire contract, as objective evidence of the parties' mutual expression of assent." *H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 2005-NMCA-068, ¶ 19, 137 N.M. 626, 114 P.3d 306. We favor a reasonable construction, generally giving the language its usual and customary meaning, *id.*, and accord every provision "its significance in light of other provisions," *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651. "[W]e strictly construe a contract against the party who drafted the contract in order to protect the rights of the party who did not draft it." *Id.*

{16} Although we begin with the plain language of the contract, we do not construe the words of the contract in a vacuum. We rely on extrinsic evidence of the circumstances under which the parties contracted and the purpose of the contract in

order to discern the intended meaning even of language seemingly clear on its face. *See Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 10, 114 N.M. 778, 845 P.2d 1232 ("[W]e follow[] the modern trend and adopt[] the contextual approach to contract interpretation, in recognition of the difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding." (internal quotation marks and citation omitted)).

{17}   When a transaction involves multiple contracts or multiple documents, and the question of integration is raised, we apply these same principles. *See Nellis v. Farmers Ins. Co. of Ariz.*, 2012-NMCA-020, ¶¶ 48-50, 272 P.3d 143 (holding that extrinsic evidence is used "to help determine the level and scope of integration of the contract"); *see also* Restatement (Second) of Contracts § 214(a), (c) (1981) (providing that "[a]greements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish" both "the meaning of the writing" in general, and whether the "writing is or is not an integrated agreement"). "Where there are no issues of fact concerning the wording of a document or the circumstances under which it was agreed to by the parties, courts will decide whether the document or documents are integrated . . . as a matter of law." *Nellis*, 2012-NMCA-020, ¶ 44.

8

**III.  The RISC Is Not an Integrated Contract and Does Not Supersede the Buyer's Agreement**

{18}   We now apply these rules of construction to the two contracts at issue in this appeal: the Buyer's Agreement and RISC. There are no facts in dispute either as to the language of the Buyer's Agreement and the RISC, or as to the circumstances under which the two contracts were prepared and executed. We, therefore, decide as a matter of law whether the contracts are integrated.

{19}   We begin by reviewing the plain language of the clause in the RISC that Seller claims unambiguously states the parties' intent to adopt the RISC as the stand-alone, integrated agreement between the parties concerning the purchase of Buyer's vehicle. The clause at issue states,

> **HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.

{20}   We start with the bolded and capitalized first sentence, which also serves as the title of the clause. First, we note that bolding and capitalization are both commonly used to highlight a particular word, phrase, or sentence, in order to bring it to the attention of the party signing the contract. *See Young v. Welytok*, 2011 WI App 59, ¶ 20, 333 Wis. 2d 140, 798 N.W.2d 881 (noting that using both bold and capitalized typeface is designed to make the language stand out). The bolded and capitalized first sentence, or title of the clause, describes the subject of the clause as,

9

"How this contract can be changed." The title and the last two sentences of the four-sentence clause plainly address solely how changes are to be made to the RISC in the future. Only subsequent amendments or supplements to the RISC that are in writing and signed by the parties will become part of the RISC. Importantly, a contract clause addressing future negotiations or changes to a contract is not an integration clause. *See Nakashima v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-027, ¶ 12, 141 N.M. 239, 153 P.3d 664 (explaining that an integration clause replaces or supersedes prior and contemporaneous contracts concerning the same transaction, not subsequent agreements).

{21} Seller's claim, that this clause is an integration clause, superseding the Buyer's Agreement, turns on the second sentence of the clause. Seller focuses on the first phrase in that sentence, which states in part: "This contract contains the entire agreement between you and us." This sentence, however, does not end there. There is a final phrase. The sentence as a whole, with the final phrase included, reads as follows: "This contract contains the entire agreement between you and us *relating to this contract*." We find it significant that the sentence when read as a whole provides that this statement is the "entire agreement" of the parties only applies to "*this contract*"; i.e., to the RISC, and not to "*this transaction*" or, even to "*the purchase of this vehicle*." Further, there is no language in the clause that provides that the RISC supersedes, discharges, replaces, or substitutes for other

contemporaneous agreements, or that it controls or prevails in the event of a conflict with other prior or contemporaneous agreements. *Compare*, *Richards*, 2003-NMCA-001, ¶ 13 ("This Agreement supersedes any and all other agreements either written or oral between the parties . . . . To the extent that this agreement conflicts with prior agreements, if any, between these parties this agreement and its provisions will prevail and control."), *and KFC Corp. v. Darsam Corp.*, 543 F. Supp. 222, 223-24 (W.D. Ky. 1982) ("This agreement supersedes any and all other oral or written agreements between the parties hereto with respect to . . . the subject matter hereof and contains all the covenants and agreements between the said parties with respect to said matter.").

{22}    Other courts have found that this language when used in a retail installment sales contract is not intended to deny effect to any provision in any other contemporaneously entered contract that is part of the same transaction. *See Mooneyham v. BRSI, LLC*, 682 F. App'x 655, 660 (10th Cir. 2017); *see also Najera v. David Stanley Chevrolet, Inc.*, 2017 OK CIV APP 62, ¶ 14, 406 P.3d 592, 596 (same). The Court of Appeals for the Tenth Circuit in *Mooneyham* construed identical language in a retail installment contract, rejecting the argument made by Seller here and holding that "the clause [at issue here] doesn't preclude incorporation of other agreements into the transaction as a whole." 682 F. App'x at 660. Finding that the clause does not express the intent of the parties that the retail installment

11

sales contract discharge or supersede the contemporaneously entered purchase agreement, the Tenth Circuit construed the installment contract and purchase agreement together, applying the general principle of contract law that several contracts relating to the same transaction, especially those executed at the same time, between the same parties, and each carrying out the intent of the other, should be construed as one contract. *See id.*

{23}    This general rule of contract construction has long been applied by New Mexico. Both our Supreme Court and this Court have held that, absent the contrary intent of the parties, "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together." *Levenson*, 1997-NMCA-020, ¶ 14 (text only) (quoting *City of Clovis v. Sw. Pub. Serv. Co.*, 1945-NMSC-030, ¶ 33, 49 N.M. 270, 161 P.2d 878); *see also Master Builders, Inc. v. Cabbell*, 1980 NMCA-178, ¶ 8, 95 N.M. 371, 622 P.2d 276 (noting that this rule applies when two instruments are part of the same transaction). This rule of construction recognizes that a party who is presented with two documents to sign at the same time in order to complete a purchase will, absent clear language to the contrary, assume that both documents apply to the transaction. *Najera*, 2017 OK CIV APP 62, ¶ 16 (noting that executing two agreements together clearly expresses the parties' intent that the agreements be read together).

**{24}** We conclude that the merger clause relied on by Seller does not express the parties' intent that the RISC supersede or replace the Buyer's Agreement or the Buyer's Agreement arbitration provision. The merger clause precludes only the incorporation of future amendments into the RISC unless they are in writing and signed by the parties. It does not preclude the incorporation of the contemporaneously executed Buyer's Agreement addressing the terms of Buyer's vehicle purchase into the transaction as a whole.

**{25}** For the reasons stated, we conclude that the district court correctly rejected Seller's argument that the RISC is an integrated agreement, and that its arbitration provision supersedes the conflicting arbitration provision in the Buyer's Agreement. We, therefore, affirm the district court's denial of Seller's motion to compel arbitration.

**CONCLUSION**

**{26}** The decision of the district court denying Seller's motion to compel arbitration is affirmed, and this case is remanded to the district court for further proceedings consistent with this opinion.

**{27}** **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

13

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**


_____
**KATHERINE A. WRAY, Judge**