STATE of Wisconsin, Plaintiff-Respondent,

v.

Drew E. BERGWIN, Defendant-Appellant.

Court of Appeals

*Nos. 2009AP1151–CR, 2009AP1152–CR. Submitted on briefs February 2, 2010.—Decided September 14, 2010.*

2010 WI App 137

(Also reported in 793 N.W.2d 72.)

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Drew Bergwin appeals judgments of conviction, entered on his no contest pleas, for five counts of burglary as party to a crime and two counts of felony bail jumping. Bergwin was sixteen years old when he committed the burglaries, and was charged as an adult three days after his seventeenth birthday. We conclude statements by the State to

Bergwin's intake worker demonstrate an unequivocal intent to delay charging Bergwin as a juvenile in violation of his due process right to juvenile adjudication. Consequently, we reverse Bergwin's burglary convictions. We also reverse Bergwin's bail jumping convictions because the adult criminal court lacked jurisdiction to impose bond conditions. Additionally, we sanction Bergwin's appellate counsel for her failure to comply with the Rules of Appellate Procedure.

## BACKGROUND

¶ 2. On April 14, 2008, Sean House implicated Bergwin in a series of recent burglaries to several Door County stores and restaurants. House was charged on May 1, 2008. Bergwin was subsequently charged as an adult on June 9, 2008—three days after his seventeenth birthday. Bergwin was released on a $3,500 signature bond, with the condition that he have no contact with House.

¶ 3. On September 8, 2008, Bergwin filed a motion to dismiss, alleging the State intentionally delayed charging him to avoid juvenile jurisdiction. Four witnesses testified at the motion hearing, including police investigator James Valley, juvenile court intake worker Susan MacLean, and Sally Baudhuin, an administrative assistant in the district attorney's office.[1]

¶ 4. Valley testified he treated Bergwin's case as a juvenile referral and had substantially completed his investigation of the burglaries when he referred the matter to social services on April 25, 2008.

---

[1] A fourth witness, from Door County Social Services, testified that, after receiving a report from law enforcement, it would generally take social services six or seven days to refer juvenile matters to the district attorney, and another twelve to thirteen for the district attorney to file a petition.

¶ 5.	MacLean testified she received Valley's referral on April 29, 2008. She spoke with the district attorney's office on two occasions, each time taking contemporaneous notes. During the first conversation on May 19, 2008, MacLean wrote, "Due to [Bergwin] turning 16 [sic] within the 40 days for intake and the co-defendant is in adult court, [Bergwin's] case will also be handled in adult court." MacLean's note indicates that after the conversation, she cancelled an intake conference with Bergwin's father. MacLean again spoke with the district attorney's office on May 21, 2008. During that conversation, MacLean noted, "Victims have sent information to DA. [One victim] wants him in adult court and says he has . . . done things since this. She is very angry. 17 on 6/6. Handle both in adult court." MacLean closed Bergwin's file on May 29, 2008.

¶ 6.	Baudhuin was the sole member of the district attorney's office to testify. She stated she received MacLean's referral on May 23, 2008. She described the intake and referral process generally, but could not recall any discussions with social services regarding Bergwin's case.

¶ 7.	The circuit court denied Bergwin's motion. It noted both Valley and MacLean denied intentionally delaying Bergwin's case, and found their testimony credible.

¶ 8.	On October 27, 2008, the State charged Bergwin with five counts of felony bail jumping, alleging he and House were living together with Bergwin's father. Bergwin entered no contest pleas to the burglary charges and two bail jumping charges as part of a consolidated plea agreement. The court accepted the joint recommendation, withheld sentence and placed Bergwin on three years' probation.

741

## DISCUSSION

■

¶ 9. A juvenile's due process objections to adult
court jurisdiction present a question of constitutional
fact. *State v. LeQue*, 150 Wis. 2d 256, 265, 442 N.W.2d
494 (Ct. App. 1989). We apply a two-step standard of
review under these circumstances, upholding the cir-
cuit court's findings of historical fact unless they are
clearly erroneous, but reviewing the circuit court's
application of constitutional principles to those facts de
novo. *State v. Kelsey C.R.*, 2001 WI 54, ¶ 12, 243
Wis. 2d 422, 626 N.W.2d 777.

¶ 10. In general, exclusive jurisdiction is vested in
the juvenile court over any juvenile alleged to be
delinquent for violating a state law. Wis. Stat.
§ 938.12(1).[2] For prosecution purposes, a "juvenile" is
any person under the age of seventeen at the time the
criminal complaint is filed. Wis. Stat. § 938.02(10m);
*State ex rel. Koopman v. Waukesha Cnty. Ct. Judges*, 38
Wis. 2d 492, 499, 157 N.W.2d 623 (1968). A juvenile can
be prosecuted for most crimes in adult criminal court
only if juvenile jurisdiction is waived pursuant to Wis.
Stat. § 938.18.

■ ■

¶ 11. "Administrators of a state juvenile system
may not manipulate administrative procedures so as to
avoid state and constitutional procedural rights meant
to protect juveniles." *State v. Becker*, 74 Wis. 2d 675,
677, 247 N.W.2d 495 (1976) (quotation omitted). In
*Becker*, our supreme court held that when charging
authorities suspect a juvenile of committing a crime,

---

[2] All references to the Wisconsin Statutes are to the
2007–08 version unless otherwise noted.

"jurisdiction in a criminal court cannot be maintained on a charge brought after the child becomes eighteen, unless it is affirmatively shown that the delay was not for the purpose of manipulating the system to avoid juvenile court jurisdiction."[3] *Id.* at 678. The State bears the burden of proving a lack of manipulative intent. *State v. Montgomery*, 148 Wis. 2d 593, 603, 436 N.W.2d 303 (1989).

■

¶ 12. The State, arguing the testimony at Bergwin's motion hearing demonstrated a lack of manipulative intent, largely relies on the circuit court's credibility findings. At the conclusion of the hearing, the court stated:

> I find that the witnesses that have been called by both sides are all credible, and I adopt their testimony, and in particular, those who were directly involved in processing this case: Sally Baudhuin, Jim Valley, and Sue MacLean. At least the second two have said under oath that they did not in any way deliberately delay or intentionally delay the process in order to avoid juvenile jurisdiction.

Credibility findings are entitled to substantial deference. *See State v. Hughes*, 2000 WI 24, ¶ 2 n.1, 233 Wis. 2d 280, 607 N.W.2d 621. We therefore accept the circuit court's finding that Valley, MacLean, and Baudhuin were all believable. This case, however, does not turn on credibility findings.

---

[3] *State v. Becker*, 74 Wis. 2d 675, 677, 247 N.W.2d 495 (1976), was decided at a time when an adult was defined as any person who had attained the age of eighteen. *See* Wis. Stat. § 48.02(3) (1975). The age at which a court of criminal jurisdiction has original jurisdiction of a defendant accused of committing a crime has since been lowered from eighteen to seventeen. *See* Wis. Stat. §§ 938.02(1), 10(m), and 938.12.

¶ 13. In denying Bergwin's motion, the circuit court overlooked clear, credible evidence of manipulation by the State. MacLean's notes establish that before she completed her intake inquiry, the State had already decided to prosecute Bergwin as an adult. MacLean evidently believed the matter was out of her hands, as she promptly cancelled an intake conference with Bergwin's father, referred the case to the district attorney's office, and closed Bergwin's file. No member of the district attorney's office disputed this version of events. In fact, no attorney from the prosecutor's office testified.[4] The absence of a sworn denial of delay from the State stands in stark contrast to those from both the investigating officer and the court intake worker. We emphasize it is the State's burden to show a lack of manipulative intent.

█

¶ 14. We have previously noted that law enforcement, intake workers, and the district attorney all serve important, but different, roles in our juvenile justice system. "[I]t is not the task of a juvenile intake worker to investigate the juvenile's alleged crime." *J.W.T. v. State*, 159 Wis. 2d 754, 761–62, 465 N.W.2d 520 (Ct.

---

[4] The State apparently believed it sufficient to call Baudhuin, an administrative assistant in the district attorney's office. Her testimony, however, did not offer any insight into the propriety of the State's conduct. In general, Baudhuin provided an overview of the juvenile process. She also discussed the difficulty of scheduling a plea hearing in Bergwin's case, which has little to do with the timeliness of the charges. In any event, Baudhuin conceded a plea hearing could have been held the day before Bergwin turned seventeen. Baudhuin was unable to recall any discussions with MacLean regarding Bergwin's case, nor did she say anything about the case's handling within the district attorney's office.

App. 1990). Nor is it the intake worker's duty to determine whether a petition could actually be filed before inquiring into the appropriate disposition of the case.[5] *Id.* at 762. Instead, the purpose of the intake inquiry is to ascertain, on behalf of the court, the best interests of the juvenile and of the public. WIS. STAT. § 938.24(1). Juvenile intake workers must exercise independent judgment when determining whether to recommend that a petition be filed, enter into an informal disposition, or close a case within forty days of the receipt of the referral information. *See* WIS. STAT. §§ 938.24(3)-(5). In short, juvenile intake workers do not perform their statutory duties by simply acceding to the demands of other institutions.

¶ 15. The State offered no plausible explanation to justify its expressed intent to delay charging Bergwin. In other cases, the state has presented evidence that either an ongoing investigation or problems locating the defendant caused the delay. *See State v. Velez*, 224 Wis. 2d 1, 21, 589 N.W.2d 9 (1999) (defendant did not dispute that police made a good faith effort to find defendant before his birthday); *Montgomery*, 148 Wis. 2d at 599–600 (measures to locate and charge the defendant were reasonable); *Becker*, 74 Wis. 2d at 678 (delay due to ongoing drug investigation acceptable); *LeQue*, 150 Wis. 2d at 268–69 (investigative period justified charging delay). Here, Valley testified his investigation was completed approximately a month and a half before Bergwin turned seventeen. That House

[5] This responsibility falls to the district attorney, who may decide to file a petition, close the case or refer the matter back to intake with a decision not to file a petition or a request for further investigation. WIS. STAT. § 938.25(2).

was charged on May 1, 2008, adds credence to Valley's statement and further suggests the State intentionally delayed charging Bergwin.[6] *See Becker*, 74 Wis. 2d at 678 ("Prima facie, it is apparent that [the defendant] was charged at the same time that all other drug offenders revealed in the same investigation were charged."). There is no evidence Bergwin was uncooperative or unavailable in a way that would have delayed his case.

¶ 16. The testimony elicited at the motion hearing establishes that the State inappropriately invaded the intake worker's domain and improperly deprived the juvenile court of jurisdiction. The State's actions circumvented the statutory juvenile justice process and, in turn, abrogated Bergwin's right to due process of law. Accordingly, we reverse his convictions for burglary and, on remand, direct that those charges be dismissed.

¶ 17. Because the State improperly deprived the juvenile court of jurisdiction, we also reverse Bergwin's bail jumping convictions. The adult criminal court lacked jurisdiction to adjudicate Bergwin's case, and therefore also lacked authority to establish bond conditions. *Cf. Becker*, 74 Wis. 2d at 678 ("jurisdiction in a criminal court cannot be maintained on a charge brought after the child becomes eighteen, unless it is affirmatively shown that the delay was not for the purpose of manipulating the system to avoid juvenile

---

[6] If the district attorney wished to prosecute Bergwin in adult criminal court with House, the proper procedure would have been to file a petition requesting the juvenile court waive its jurisdiction. *See* WIS. STAT. §§ 938.18(1)(c), (2). This would have given Bergwin an opportunity to present testimony and argue in favor of retaining jurisdiction. *See* WIS. STAT. § 938.18(3)(b).

court jurisdiction"). Further, even if the case had been properly filed in juvenile court, Bergwin could not be prosecuted for bail jumping because the Juvenile Justice Code does not provide for monetary conditions of release.[7] Accordingly, we reverse Bergwin's bail jumping convictions and direct that those charges also be dismissed.

■

¶ 18. We also sanction Bergwin's appellate counsel. Bergwin does not include citations to the record to corroborate the facts set out in his brief. An appellant's failure to provide record citations violates WIS. STAT. RULE 809.19(1)(d)-(1)(e) and seriously hampers our ability to efficiently resolve the appeal. That burden is magnified where, as here, the respondent elects not to provide a full statement of the case. *See* WIS. STAT. RULE 809.19(3)(a)2. Failure to provide record citations does a disservice to the client, too, as it precludes any challenge on reconsideration to the facts stated in the opinion. *State v. Haynes*, 2001 WI App 266, ¶ 1 n.2, 248 Wis. 2d 724, 638 N.W.2d 82. We therefore sanction Bergwin's appellate counsel and direct her to pay $200 to the clerk of this court within thirty days of this decision. *See* WIS. STAT. RULE 809.83(2).

*By the Court.*—Judgments reversed and causes remanded with directions; attorney sanctioned.

■

[7] Instead, a juvenile who intentionally fails to comply with the conditions of his or her placement in nonsecure physical custody is subject to prosecution for a Class A misdemeanor. *See* WIS. STAT. 938.205, 938.207, 946.495.