PER CURIAM.
¶ 1 Ryan Hobbick appeals a judgment, entered upon a jury's verdict, convicting him of one count of burglary, as a party to the crime. He also appeals an order denying postconviction relief. Hobbick contends that: (1) the circuit court erroneously exercised its discretion by allowing the State to introduce "other acts" evidence at trial; (2) he was denied his due process right to a fair trial when the State failed to disclose a favorable plea agreement it had reached with his codefendant, Miles Gloss; and (3) his trial attorney provided ineffective assistance by failing to cross-examine Gloss about his plea agreement and by failing to request a cautionary jury instruction regarding the same. We reject Hobbick's arguments and affirm.
BACKGROUND
¶ 2 An Information charged Hobbick with one count of burglary, as a party to the crime. The State alleged that Hobbick and Gloss had stolen various items from A to Z Towing, a salvage yard located in Dunn County, between September 1 and December 31, 2014. A to Z Towing had previously been owned and operated by Wayne Larson, but it had been closed since Larson's death in 2010.
¶ 3 Like Hobbick, Gloss was also charged with a single count of burglary, as a party to the crime, in connection with the thefts from A to Z Towing. On April 7, 2015-over ten months before Hobbick's trial-Gloss entered a guilty plea to that charge. In exchange for his plea, additional charges in other matters were dismissed and read in for purposes of restitution, and the parties agreed to jointly recommend that the circuit court withhold sentence and impose a three-year term of probation. The plea agreement required Gloss to provide "a complete disclosure to law enforcement regarding these cases as well as testify truthfully regarding any co-defendants." The court accepted Gloss's guilty plea and, consistent with the parties' recommendation, withheld sentence and imposed three years of probation. However, Gloss's probation was subsequently revoked, and on January 8, 2016-approximately one and one-half months before Hobbick's trial-he was sentenced to four years of initial confinement, followed by four years of extended supervision.
¶ 4 At Hobbick's trial, Gloss testified that he, Hobbick, and Stevie Walls, Sr., entered the A to Z Towing property on multiple occasions "somewhere around" November 2014 and stole copper, "car stuff," and tools. Gloss testified the three men scrapped some of the property they took from A to Z Towing, and they stored other items of stolen property at Walls' residence. Gloss also testified that he saw a box of checks on the floor of a tow truck at A to Z Towing, but he denied taking any of the checks.
¶ 5 Michael Larson-Wayne Larson's son and the current owner of A to Z Towing-testified he found a receipt on A to Z Towing's property dated December 10, 2014, for the sale of gas at a Kwik Trip in Lake Hallie, Wisconsin. Other trial testimony established that Hobbick and Donald Charles, who was dating Hobbick's mother-in-law, purchased gas at the Lake Hallie Kwik Trip on that date. Charles testified he paid for the gas using a check and left the receipt in his truck. He further testified that he repeatedly loaned his truck to Hobbick and Gloss during the fall of 2014. He denied ever having been to A to Z Towing.
¶ 6 Evidence at Hobbick's trial also showed that, in December 2014, Hobbick's wife, Tiffany Hobbick, told police that Gloss had approached Hobbick about a plan to "case" various businesses in order to burglarize them. Tiffany told police Hobbick initially refused to participate in Gloss's plan, but he later agreed after he and Tiffany quit their jobs in October 2014 and fell on financial hard times. During a search of Tiffany and Hobbick's home, police recovered a notebook containing a list of electrical supply stores and other businesses, many of which had been burglarized. Tiffany admitted at trial that she and Hobbick kept the notebook in their home and wrote the names of businesses in it, but she denied it contained a list of businesses to be "cased."
¶ 7 Prior to Hobbick's trial, the State had moved to introduce what it characterized as "other acts" evidence regarding two topics: (1) checks from A to Z Towing, bearing the forged signature of Wayne Larson, which Hobbick and Tiffany had attempted to deposit; and (2) online purchases that were made on Tiffany and Hobbick's home computer using Wayne Larson's name. The circuit court granted the State's motion, concluding the evidence in question was relevant to establish Hobbick's identity as one of the burglars, as well as his "lack of mistake."
¶ 8 Consequently, the State introduced evidence at Hobbick's trial that, on December 7, 2014, Tiffany deposited a check for $4500 from A to Z Towing into her bank account. Although the check was dated December 7, 2014, it was purportedly signed by Wayne Larson, who had died in 2010. The check's memo line contained the notation "2001 eclipse."
¶ 9 The following morning, Tiffany withdrew $3000 from her bank account. Later that day, Tiffany and Hobbick attempted to deposit a second check for $4500 from A to Z Towing into Tiffany's account. The second check was dated December 8, 2014, and like the prior check, it was purportedly signed by Wayne Larson and contained the notation "2001 eclipse" in the memo line.
¶ 10 Bank employees became suspicious when Tiffany and Hobbick attempted to deposit the second check, given its similarities to the first check. They therefore conducted an internet search, which revealed that the individual named Wayne Larson who had owned A to Z Towing was deceased. Bank staff then called the police, who confronted Tiffany and Hobbick about the checks. Hobbick told police that he and Tiffany had sold their vehicle to Larson, who had given them two separate checks as payment. When shown Larson's obituary, which included a photograph, Hobbick asserted Larson was not the individual to whom they had sold their vehicle. A bank employee testified Hobbick "basically present[ed] it to us as they had been duped on the sale of their car." However, Tiffany subsequently told police that, on the way home from the bank that day, she and Hobbick tore up the remaining checks from A to Z Towing and threw them out the window because they were scared.
¶ 11 The State also introduced evidence at Hobbick's trial that, in the fall of 2014, someone using Tiffany and Hobbick's home computer made multiple online purchases from Menards using the name "Wayne Larson." The purchases included $8000 of copper pipe. On November 14, 2014, someone picked up copper pipe from Menards that had been ordered under Wayne Larson's name. On the same day, Hobbick sold 529 pounds of new copper pipe at a scrap yard for $1322.50. The next day, he sold another load of copper at a different scrap yard for $2113. When questioned by police, Hobbick admitted purchasing copper from Menards but claimed he had paid with a check. He also admitted selling some of the copper he had purchased for scrap, but he did not explain why he would scrap new copper.
¶ 12 Hobbick testified in his own defense and denied burglarizing A to Z Towing. He admitted going to the bank with Tiffany in December 2014 to deposit a check for the sale of a 2001 Mitsubishi Eclipse, but he denied having any knowledge that the check had been written on A to Z Towing's account. He testified Tiffany told him she received the check from Gloss. He denied purchasing anything from Menards under Wayne Larson's name.
¶ 13 The jury found Hobbick guilty of the single burglary count charged in the Information. Hobbick filed a postconviction motion for a new trial, arguing he was denied his due process right to a fair trial when the State failed to disclose Gloss's plea agreement to Hobbick's trial attorney. In the alternative, Hobbick argued that if his trial attorney was, in fact, aware of the plea agreement prior to trial, counsel was ineffective by failing "to cross-examine Gloss ... about the agreement and to request a jury instruction regarding the same."
¶ 14 The circuit court denied Hobbick's postconviction motion, following a Machner hearing.[1] The court found that the prosecutor orally informed Hobbick's trial attorney of Gloss's plea agreement before Hobbick's trial. The court further determined that, even if the State did not inform Hobbick's trial attorney of the plea agreement, any error in that regard was harmless because trial counsel could have easily learned of the plea agreement using CCAP[2] and because the agreement did not entail any "promise ... of any future incentives or consideration for Mr. Gloss's testimony." Finally, the court concluded Hobbick's trial attorney was not ineffective. Hobbick now appeals.
DISCUSSION
I. Admission of "other acts" evidence
¶ 15 On appeal, Hobbick first argues the circuit court erred by permitting the State to introduce inadmissible "other acts" evidence during his trial-specifically, evidence regarding the forged checks from A to Z Towing, and evidence regarding the online purchases made using Wayne Larson's name. The admissibility of evidence lies within the circuit court's discretion. State v. Dukes , 2007 WI App 175, ¶ 26, 303 Wis. 2d 208, 736 N.W.2d 515. A court properly exercises its discretion when it considers the facts of record, applies the proper legal standard, and reasons its way to a rational and legally sound conclusion. Id.
¶ 16 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. WIS. STAT. § 904.04(2) (2015-16).[3] However, such evidence may be admissible when offered for another purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. Moreover, not all evidence of prior bad acts constitutes "other acts" evidence in the eyes of the law. State v. Seefeldt , 2002 WI App 149, ¶ 21, 256 Wis. 2d 410, 647 N.W.2d 894. "Evidence is not 'other acts' evidence if it is part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." Dukes , 303 Wis. 2d 208, ¶ 28. Such "panorama" evidence is admissible as long as it is relevant and its probative value is not outweighed by the danger of unfair prejudice or other related concerns. See WIS. STAT. §§ 904.02, 904.03.
¶ 17 Here, the State's evidence regarding the forged checks and online purchases was part of the panorama of evidence concerning the charged crime, in that it provided circumstantial evidence of Hobbick's involvement in the burglaries of A to Z Towing.[4] Gloss testified at trial that he and Hobbick broke into A to Z Towing and stole property on multiple occasions during the fall of 2014. He further testified that, on one of those occasions, he saw a box of checks on the floor of a tow truck but did not take any of the checks. In light of Gloss's testimony, evidence that Hobbick and his wife attempted to cash two checks from A to Z Towing, bearing the forged signature of its deceased owner, during the same time frame as the burglaries would have permitted a reasonable inference that Hobbick obtained those checks from A to Z Towing during one of the burglaries. The evidence regarding the checks was therefore relevant, in that it tended to make Hobbick's participation in the burglaries more probable than it would have been absent the evidence. See WIS. STAT. § 904.01.
¶ 18 Evidence that someone used Hobbick's home computer to make online purchases in Wayne Larson's name was also relevant to show that Hobbick was involved in the burglaries. Specifically, the evidence permitted a reasonable inference that Hobbick made the online purchases after becoming aware of Larson's identity during the burglaries of A to Z Towing. The evidence regarding the online purchases thus tended to make Hobbick's participation in the burglaries more probable than it would have been without the evidence, and it was therefore relevant to establishing Hobbick's guilt. See id.
¶ 19 Furthermore, the probative value of the evidence regarding the checks and online purchases was not outweighed by the danger of unfair prejudice. See WIS. STAT. § 904.03. Evidence is unfairly prejudicial if it tends to influence the outcome of a trial by improper means, or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise causes a jury to base its decision on something other than the established propositions in the case. State v. Sullivan , 216 Wis. 2d 768, 789-90, 576 N.W.2d 30 (1998).
¶ 20 In this case, the evidence regarding the checks and online purchases was not so shocking as to arouse the jury's sympathies or sense of horror, such that the jury was likely to convict Hobbick on some basis other than the evidence before it. Moreover, the circuit court expressly instructed the jury that it could consider the evidence regarding the checks and online purchases only as that evidence related to Hobbick's identity as one of the burglars, and it could not use the evidence "to conclude that [Hobbick] is a bad person and for that reason is guilty of the offense charged." We presume that jurors follow the court's instructions. State v. Truax , 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989).[5]
¶ 21 Hobbick argues the circuit court should not have admitted the evidence regarding the checks because there was no "factual basis" for that evidence. Essentially, Hobbick contends there was no direct evidence that he stole any checks from A to Z Towing. He therefore asserts the State "failed to provide evidence of the existence of an 'other act' committed by Hobbick relating to these checks, as a result of which the evidence ... had no probative value in showing a link between [Hobbick] and the alleged burglary."
¶ 22 Hobbick's "factual basis" argument is unpersuasive. The State's evidence showed that Hobbick and his wife attempted to deposit checks from A to Z Towing that were purportedly signed by its deceased former owner. In addition, Gloss testified that Hobbick participated in the burglaries of A to Z Towing, and that a box of checks was present in one of the trucks on A to Z Towing's property. Taken together, this evidence supports a reasonable inference that Hobbick participated in the burglaries. The State was not required to prove, by direct evidence, that Hobbick stole checks from A to Z Towing. "Facts may be inferred by a jury from the objective evidence in a case." Shelley v. State , 89 Wis. 2d 263, 273, 278 N.W.2d 251 (Ct. App. 1979).
¶ 23 Turning to the evidence regarding the online purchases made in Wayne Larson's name from Hobbick's computer, Hobbick argues that, even if those limited facts were relevant to show his participation in the burglaries, the circuit court erred by admitting additional evidence that the purchases were made using a stolen credit card. However, Hobbick does not identify any instance during his trial in which the State introduced evidence that a stolen credit card was used to make the online purchases. Moreover, our review of the trial transcript does not reveal any reference to the use of a stolen credit card while the jury was present in the courtroom.
¶ 24 Hobbick further argues the circuit court should not have admitted evidence that Hobbick sold large amounts of new copper pipe at two different scrap yards following the online purchases. However, we agree with the State that this evidence was properly admitted. The evidence at trial showed that someone used Hobbick's home computer to purchase multiple items from Menards under Wayne Larson's name, including a large amount of copper pipe. That Hobbick sold large quantities of new copper pipe at two scrap yards shortly after the online purchases were made supports a reasonable inference that Hobbick was involved in making the online purchases. As explained above, Hobbick's involvement in the online purchases supports a reasonable inference that he participated in the burglaries of A to Z Towing, because his participation in those burglaries provides a reasonable explanation for his awareness of Wayne Larson's identity. The evidence regarding Hobbick's scrapping of copper pipe was therefore relevant, and the court did not erroneously exercise its discretion by admitting that evidence.
II. Right to a fair trial
¶ 25 Hobbick next argues that, by failing to disclose the terms of Gloss's plea agreement to the defense, the State violated Hobbick's due process right to a fair trial. Whether a defendant's right to due process has been violated presents a question of constitutional fact. See State v. Bergwin , 2010 WI App 137, ¶ 9, 329 Wis. 2d 737, 793 N.W.2d 72. We therefore apply a two-step standard of review, under which we uphold the circuit court's findings of historical fact unless they are clearly erroneous, but we independently review the court's application of constitutional principles to those facts. Id.
¶ 26 In State v. Nerison , 136 Wis. 2d 37, 46, 401 N.W.2d 1 (1987), our supreme court held that:
When the state grants concessions in exchange for testimony by accomplices or co-conspirators implicating a defendant, the defendant's right to a fair trial is safeguarded by (1) full disclosure of the terms of the agreements struck with the witnesses; (2) the opportunity for full cross-examination of those witnesses concerning the agreements and the effect of those agreements on the testimony of the witnesses; and (3) instructions cautioning the jury to carefully evaluate the weight and credibility of the testimony of such witnesses who have been induced by agreements with the state to testify against the defendant.
Here, Hobbick argues the State failed to disclose the terms of Gloss's plea agreement to the defense. He further contends that failure prevented his trial attorney from cross-examining Gloss regarding the plea agreement and from requesting an appropriate cautionary jury instruction.
¶ 27 Hobbick's due process argument fails because the circuit court expressly found that the State disclosed Gloss's plea agreement to the defense before Hobbick's trial, and that finding is not clearly erroneous. During the Machner hearing, the trial prosecutor, assistant district attorney Andrew Maki, admitted he had failed to provide Hobbick's trial counsel, attorney Jeremiah Harrelson, with a written copy of Gloss's plea agreement. However, Maki testified he and Harrelson had "multiple conversations" before Hobbick's trial "about the fact that Miles Gloss had entered a plea and part of his agreement was he was going to testify against Ryan Hobbick." In addition, Maki specifically recalled Harrelson "saying that [Hobbick] wants to know why he can't have the same agreement as [Gloss]." On cross-examination, Maki clarified that he and Harrelson had "probably two" conversations about Gloss's plea agreement, both of which occurred "in the conference room outside of the courtroom." Maki's testimony provided a sufficient basis for the circuit court to find that the State disclosed Gloss's plea agreement to Harrelson.[6]
¶ 28 Hobbick contends Harrelson's Machner hearing testimony shows that the State did not, in fact, disclose Gloss's plea agreement to the defense. However, Harrelson did not unequivocally testify that the State failed to disclose Gloss's plea agreement. Instead, he testified he "was not able to find any documentation" in his files "of information received by me from the District Attorney's Office explaining to me what concessions had been made to Miles Gloss in exchange for his testimony." When asked on cross-examination whether he had "knowledge of" Gloss's plea agreement before Hobbick's trial, Harrelson responded, "I do not believe so." He later testified he was "not certain" whether he knew about Gloss's plea agreement before Hobbick's trial. He remembered telling Maki, at some point, "that [he] thought [Hobbick] should receive a better plea offer because [Gloss] ... had received a short period in jail," but he could not remember whether that conversation occurred before or after Hobbick's trial. Harrelson's equivocal testimony regarding his knowledge of Gloss's plea agreement does not render the circuit court's finding that the State disclosed the plea agreement clearly erroneous.
¶ 29 Moreover, "[w]hen the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." State v. Peppertree Resort Villas, Inc. , 2002 WI App 207, ¶ 19, 257 Wis. 2d 421, 651 N.W.2d 345. Here, the circuit court clearly found Maki's testimony regarding the disclosure of Gloss's plea agreement more credible than Harrelson's. We must uphold that credibility determination on appeal because we cannot conclude, as a matter of law, that no factfinder could have believed Maki's testimony. See State v. Wind , 60 Wis. 2d 267, 275, 208 N.W.2d 357 (1973).
¶ 30 For all the foregoing reasons, we conclude the circuit court's finding that the State disclosed Gloss's plea agreement to the defense is not clearly erroneous. Hobbick therefore cannot prevail on his claim that the State violated his due process right to a fair trial by failing to disclose Gloss's plea agreement.[7]
III. Ineffective assistance
¶ 31 Finally, Hobbick contends that, even assuming the State disclosed the plea agreement to Harrelson, Hobbick is nevertheless entitled to a new trial because Harrelson was ineffective by failing to cross-examine Gloss about the plea agreement and by failing to request a cautionary jury instruction regarding the same. Whether an attorney rendered ineffective assistance is a mixed question of fact and law. State v. Nielsen , 2001 WI App 192, ¶ 14, 247 Wis. 2d 466, 634 N.W.2d 325. We will uphold the circuit court's findings of fact unless they are clearly erroneous. Id. However, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. Id.
¶ 32 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). If a defendant fails to make a sufficient showing on one prong of the Strickland test, we need not address the other. Id. at 697. In this case, we need not address the first prong because, even assuming Harrelson performed deficiently, we conclude Hobbick has failed to establish prejudice.
¶ 33 To demonstrate prejudice, a defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland prejudice test is "distinct from a sufficiency of the evidence test," and a defendant "need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." State v. Sholar , 2018 WI 53, ¶ 44, 381 Wis. 2d 560, 912 N.W.2d 89. However, while a defendant "need not prove the jury would have acquitted him ... he must prove there is a reasonable probability it would have, absent the error." Id. , ¶ 47.
¶ 34 Here, Hobbick cannot establish a reasonable probability that the jury would have acquitted him if Harrelson had cross-examined Gloss about the plea agreement and requested a cautionary jury instruction. Had Harrelson done so, the jury would have learned that, by the time Gloss testified at Hobbick's trial, Gloss's guilty plea had already been accepted and the agreed-upon probationary disposition had already been imposed. Although a condition of Gloss's probation required him to testify truthfully against Hobbick, the jury would also have learned that Gloss's probation was revoked approximately one and one-half months before Hobbick's trial, and he received an eight-year sentence for his role in the burglaries of A to Z Towing.
¶ 35 The jury would therefore have understood that, by the time Gloss testified at Hobbick's trial, his plea agreement no longer promised any future benefits that were contingent on his testimony against Hobbick. In other words, by the time of Hobbick's trial, the plea agreement no longer provided any incentive for Gloss to testify falsely against Hobbick in order to benefit himself. Cf. Nerison , 136 Wis. 2d at 43-44 (witnesses were promised immunity from prosecution in some matters and sentencing concessions in others, but those future benefits were contingent upon them testifying against the defendant). Thus, it is not reasonably probable that the jury would have discredited Gloss's testimony and consequently acquitted Hobbick if Harrelson had cross-examined Gloss about his plea agreement and requested a cautionary jury instruction. Hobbick has therefore failed to establish prejudice, and, as such, he cannot prevail on his ineffective assistance claim.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

CCAP, which stands for Consolidated Court Automation Programs, is a website that contains information entered by court staff about circuit court cases. See Kirk v. Credit Acceptance Corp. , 2013 WI App 32, ¶ 5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

As noted above, the circuit court concluded the evidence was admissible other acts evidence because it went to Hobbick's identity and lack of mistake. On appeal, we may affirm the court's decision on different grounds. See State v. Earl , 2009 WI App 99, ¶ 18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.

In his reply brief, Hobbick asserts-in a single-sentence argument-that the evidence regarding the checks and online purchases was unfairly prejudicial because "its admission at his trial likely added more confusion of issues than anything else offered by the State." We see nothing unduly confusing about the evidence in question, and Hobbick does not explain why he believes any confusion created by the evidence was so great as to outweigh its probative value. In addition, we observe that Hobbick does not argue the evidence was inadmissible because its probative value was outweighed by any of the other factors enumerated in Wis. Stat . § 904.03.

Although we do not rely on this fact as a basis for our decision, we also observe the circuit court correctly noted that information about Gloss's plea agreement was publicly available on CCAP.

In his reply brief, Hobbick argues the State failed to address his due process argument in its respondent's brief and has therefore conceded that issue. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded). We disagree. Although the State did not provide an extensive response to Hobbick's due process argument, it asserted that argument was "utterly without merit" in light of the circuit court's "not-clearly-erroneous" factual finding that the State disclosed Gloss's plea agreement to the defense before Hobbick's trial. As explained above, the record supports the State's position.