COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2032**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015FA224

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE CONTEMPT PROCEEDINGS IN
IN RE THE MARRIAGE OF:

ANGELA LEE LINSMEYER,

   PETITIONER-RESPONDENT,

 V.

JASON SCOTT LINSMEYER,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed*.

¶1       FITZPATRICK, P.J.[1]   Jason Linsmeyer, pro se, appeals an order of the Dodge County Circuit Court that denied Linsmeyer's motion to enforce a physical placement order and ordered Linsmeyer to pay his former spouse, Angela Miller,[2] child support from Linsmeyer's prison release account.  Linsmeyer argues that the circuit court's failure to grant his request to subpoena the production of phone records from the correctional institute where he is incarcerated deprived him of his right to due process.  Linsmeyer also argues that the court erred by ordering that his child support obligation be deducted from his prison release account.  I reject Linsmeyer's arguments and affirm.

## BACKGROUND

¶2       There is no dispute regarding the following material facts.

¶3       Linsmeyer has been incarcerated at the Jackson Correctional Institution since at least June 2015.  In March 2016, a divorce judgment ending Linsmeyer's marriage to Miller was entered.  At the time of their divorce, Linsmeyer and Miller had six minor children.  In the judgment of divorce, the circuit court

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  Angela Miller was formerly known as Angela Linsmeyer.

Miller did not file a respondent's brief as required by the rules of appellate procedure.  *See* WIS. STAT. RULE 809.19(3).  The failure of a respondent to file a brief is grounds for summary reversal.  *See* WIS. STAT. RULE 809.83(2); ***State ex rel. Blackdeer v. Township of Levis***, 176 Wis. 2d 252, 259-60, 500 N.W.2d 339 (Ct. App. 1993) (stating summary reversal is an appropriate sanction for a respondent's violation of briefing requirements).  However, whether to grant summary reversal as a sanction against a party who fails to file a brief is a decision left to this court's discretion.  ***Raz v. Brown***, 2003 WI 29, ¶14, 260 Wis. 2d 614, 660 N.W.2d 647.  I have determined that this appeal does not warrant summary reversal and decide the appeal based solely upon my review of Linsmeyer's brief, the record, and applicable authorities.

awarded Miller sole physical placement of the children and ordered that Linsmeyer have weekly phone visits with the children.

¶4      In July 2016, Linsmeyer filed a motion requesting an "Order to Show Cause for Contempt," alleging that he had been denied phone visits with the children. Miller, in turn, filed a motion with the court seeking modification of the parties' placement order. Miller averred that she had "made efforts" to comply with the placement order but "[n]one of [the] children wish to talk with [Linsmeyer]" and "are extremely traumatized when they have been forced to talk with [Linsmeyer]." A hearing on the parties' motions was held, and the court entered an order that denied, with prejudice, Linsmeyer's request for a contempt order, but modified the placement order to provide as follows:

> [Linsmeyer] shall call [Miller's] phone every Wednesday at 12:40 p.m. to talk with his children. At that time, [Miller] shall make [the four youngest children] available to talk to [Linsmeyer]. She will answer the phone, and, if any of the children want to talk with [Linsmeyer] at that time, she shall make them available to the phone. If one or more of the children do not wish to talk with [Linsmeyer], [Miller] shall advise [Linsmeyer] of that at the time of the telephone call…. [Linsmeyer] is not to call to talk with the children at any other time.
>
> … [Linsmeyer] is allowed to call [the two older children] at any time, because they have their own phones. If they want to talk to him, they will answer the phone. If not, they will not answer the phone.

¶5      In May 2018, Linsmeyer filed a motion with the circuit court to enforce the physical placement order, alleging that his periods of placement had been denied or substantially interfered with by Miller, and requesting that the court find Miller to be in contempt. A hearing was held on Linsmeyer's motion, and, in December 2018, the court entered an order that modified the placement order but

left pending a ruling on Linsmeyer's motion. The December 2018 order provided in pertinent part:

- "[A]t 12:40 p.m., [Linsmeyer] shall call [Miller]'s cell phone to talk to the children" on the following five dates: December 19, 2018; January 23, 2019; February 20, 2019; February 20, 2019; March 20, 2019; and April 24, 2019.

- Miller "shall make the children available" on the five specified dates at the specified time "and when [Linsmeyer] calls, if a child wants to talk to him, [Miller] shall put the child on the telephone. If a child does not want to talk to him, [Miller] shall advise [Linsmeyer] of that."

- After the April 24, 2019 telephone call, the court "will set … a hearing … to review status."

¶6    In May 2019, Miller filed a motion with the circuit court requesting an order requiring Linsmeyer to pay child support. A hearing was held on August 27, 2019, to address Miller's child support request. Upon Linsmeyer's agreement to pay monthly child support and his agreement that child support be deducted from his release account, the court ordered Linsmeyer to pay Miller monthly child support in the amount of $25 and ordered that any funds remaining in Linsmeyer's prison release account after court costs were deducted from that account would be paid to Miller towards Linsmeyer's child support obligation.

¶7    At the August 27, 2019 hearing, the court also revisited Linsmeyer's May 2018 motion to enforce the physical placement order and for contempt. At the hearing, Linsmeyer informed the court that sometime before the hearing he had filed

a request to subpoena phone records from the Jackson Correctional Institution. The court did not grant Linsmeyer's request to grant the subpoena. The court received testimony from Linsmeyer and Miller, who gave conflicting testimony concerning Miller's compliance with the placement order. The court found credible Miller's testimony that she had complied with the placement orders. Based upon the court's discussion with the children prior to the hearing, the court also found that the children are "angry" with Linsmeyer and "don't want to talk to [him]." Based on those findings, the court determined that Linsmeyer had not shown that Miller had denied or interfered with Linsmeyer's phone visitation and denied Linsmeyer's motion.

¶8      Additional material facts, including the relevant evidentiary hearing testimony, is mentioned in the discussion below.

**DISCUSSION**

### I.  The Circuit Court Ruling on Linsmeyer's Motion to Enforce the Physical Placement Order.

¶9      Linsmeyer challenges the circuit court's September 2019 order denying Linsmeyer's May 2018 motion to enforce the physical placement order. Linsmeyer asserts that the court violated his right to due process by denying that motion without first granting his request for the issuance of a subpoena requiring the Jackson Correctional Institution to produce certain phone records. I begin by first setting forth additional material facts and then the standard of review.

**A. Additional Material Facts.**

¶10    On August 22, 2019, five days before the hearing on Miller's motion for child support, Linsmeyer filed a motion with the circuit court "requesting subpoena of phone records." In his motion, Linsmeyer stated:

> Please take notice that … Linsmeyer[] will appear before [the circuit court] … on the 27th day of August 2019, and will ask the [c]ourt to order the Subpoena of phone records of the respondent … Angela Lee Miller. Specifically I will ask the court to subpoena all received phone calls from [a phone number belonging to the Jackson Correctional Institution] to [Miller's phone number] from February 1st of 2016 until December 31st of 2018.

¶11    At the August 27, 2019 hearing, the court reviewed the status of Linsmeyer's May 2018 motion alleging that Miller had prevented or interfered with Linsmeyer's phone visitation with the children and requesting a contempt order against Miller. Linsmeyer informed the court that he had filed with the court a motion requesting a subpoena of the phone records of the Jackson Correctional Institution "so that we [do not] have to rely on individual testimony." The court did not grant Linsmeyer's request.

¶12    The circuit court heard testimony from Miller and Linsmeyer, who gave conflicting testimony on Miller's compliance with the placement order. Miller testified that, on all dates Linsmeyer was scheduled to have a phone visit with the children, she answered the phone if Linsmeyer called within the court-ordered time, that the children were given an opportunity to talk with Linsmeyer, and that the calls lasted "long enough for [Miller] to tell [Linsmeyer] that the children did not want to talk to [him]."

¶13    Linsmeyer testified that Miller had denied him phone visits with the children on at least eight separate dates between January 2018 and May 2018.

However, Linsmeyer admitted that the controlling placement order provided that Linsmeyer was to have phone visits with the children at 12:40 p.m. on December 18, 2018; January 23, 2019; February 20, 2019; March 20, 2019; and April 24, 2019. As to those dates, Linsmeyer testified that on one date he called at the specified time, on one date he called late, and he did not call on the other three dates. As to the single occasion that Linsmeyer timely called, Linsmeyer did not testify that Miller prevented or interfered with his right to speak with the children.

¶14    The circuit court found Miller's testimony that she complied with the placement orders to be credible. Based on Miller's testimony and the court's discussion with the children during which the children informed the court that they "are angry with [Linsmeyer]," the court denied Linsmeyer's motion.

## B.  Standard of Review.

¶15    This case concerns whether the circuit court erred by not granting Linsmeyer's request to subpoena phone records from the Jackson Correctional Institution and whether the court's denial of that request abridged Linsmeyer's constitutional right to a fair hearing. *See General Elec. Co. v. WERB*, 3 Wis. 2d 227, 241, 88 N.W.2d 691 (1958) and *Bituminous Cas. Co. v. DILHR*, 97 Wis. 2d 730, 735, 295 N.W.2d 183 (Ct. App. 1980) (stating an order made in a proceeding in which there has not been a full hearing is a denial of due process).

¶16    A circuit court's decision to grant or deny a motion for a subpoena *duces tecum*[3] lies within the circuit court's discretion. *See Nashban Barrel & Container Co. v. G. G. Parsons Trucking Co.*, 49 Wis. 2d 591, 611, 182 N.W.2d

---

[3] A subpoena *duces tecum* is a "subpoena to compel production of books, papers, documents, or tangible things." *State v. Gilbert*, 109 Wis. 2d 501, 509, 326 N.W.2d 744 (1982).

448 (1971). A circuit court's discretionary decisions are reviewed under an erroneous exercise of discretion standard. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Under that standard, an appellate court will affirm a discretionary decision "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995).

¶17 Whether a due process violation has occurred presents a question of constitutional fact. *See State v. Bergwin*, 2010 WI App 137, ¶9, 329 Wis. 2d 737, 793 N.W.2d 72. When reviewing questions of constitutional fact, this court will uphold a circuit court's factual findings unless those findings are clearly erroneous. *State v. Samuel*, 2002 WI 34, ¶15, 252 Wis. 2d 26, 643 N.W.2d 423; *see* WIS. STAT. § 805.17(2). However, this court will independently decide whether those facts meet the constitutional standard. *Samuel*, 252 Wis. 2d 26, ¶15.

## C. Analysis.

¶18 Linsmeyer contends that the circuit court's failure to grant his subpoena request violated his due process right to a fair hearing. He challenges the court's finding that Miller was a credible witness and argues that without the phone records, which would have provided "impartial evidence" of whether Miller had complied with the placement order, he was denied a fair hearing. I first address Linsmeyer's challenge of the court's credibility finding.

¶19 When there is a conflict in testimony, the circuit court, when acting as the fact finder, is the ultimate arbiter of a witness's credibility. *See Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). An appellate court will not overturn a court's credibility determination unless the determination is "inherently or patently incredible or in conflict with the uniform

course of nature or with fully established or conceded facts." *Global Steel Prods. Corp. v. Ecklund Carriers, Inc.*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269. Linsmeyer argues that circuit court's finding that Miller's testimony was credible is "hardly fair" because "the court's only ground[] for finding" that Miller was credible "is that [] Linsmeyer is a prisoner." However, the court had the opportunity to observe Miller's demeanor in response to questions and to gauge the persuasiveness of her testimony. *See Lessor v. Wangelin*, 221 Wis. 2d 659, 667-68, 586 N.W.2d 1 (Ct. App. 1998). Resolution of Linsmeyer's motion turned on credibility. The court had the right to believe Miller's testimony and to reject Linsmeyer's conflicting testimony. I now turn to Linsmeyer's due process argument.

¶20 Linsmeyer asserts that the circuit court erred by not granting his request for a subpoena of the correctional institution's phone records and that, without those records, he was denied a fair hearing in violation of his due process rights. I need not, and do not, decide whether the circuit court's decision not to grant Linsmeyer's request for a subpoena was erroneous because I conclude that, even if it was (and I do not come to that conclusion), Linsmeyer's constitutional right to due process was not violated. *Cholvin v. DHFS*, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118 (stating if a decision on one point disposes of the appeal, the court will not decide other issues raised). While Linsmeyer is correct that an order made in a proceeding in which there has not been a full hearing is a denial of due process and is void, *see General Electric*, 3 Wis. 2d at 241, I am not convinced that Linsmeyer received less than a full hearing.

¶21 Circuit courts are vested with "inherent discretionary power to control [their] docket[s] with economy of time and effort." *Rupert v. Home Mut. Ins. Co.*, 138 Wis. 2d 1, 7, 405 N.W.2d 661 (Ct. App. 1987). They also have broad discretion

9

in determining the admission of evidence. ***Berg-Zimmer & Assocs., Inc. v. Central Mfg. Corp.***, 148 Wis. 2d 341, 349, 434 N.W.2d 834 (Ct. App. 1988). Circuit courts are not bound to entertain evidence that is irrelevant to the issues at hand. *See **State v. Anthony***, 2015 WI 20, ¶48, 361 Wis. 2d 116, 860 N.W.2d 10.

¶22 Linsmeyer conceded at the August 27, 2019 hearing that the controlling placement order was the order entered in December 2018. That order specified that Linsmeyer was to have phone visits with the children on five specific dates between December 2018 and April 2019, and ordered Linsmeyer to call Miller on the specified dates at a specified time. Linsmeyer testified that on four of the five specified dates he either did not call or called late, and he did not claim at the hearing that Miller prevented him from speaking with the children on the only date he timely called Miller. The phone records Linsmeyer sought in the subpoena covered calls made between February 1, 2016 and December 31, 2018. Production of those records would not have provided any unique information relevant to the question of whether Miller had prevented or interfered with the May 2018 placement order. Accordingly, I conclude that Linsmeyer's due process rights were not violated by the circuit court's failure to grant his subpoena request.

## II. The Circuit Court's Child Support Order.

¶23 Linsmeyer next contends the circuit court did not have authority to order the DOC to distribute funds from his release account to Miller for payment of his child support obligation. Linsmeyer asserts that the disbursement of release account funds is permissible only for the purpose of paying fees related to commencing or defending a legal action and that the child support payment ordered by the court does not fall within that category.

¶24    I begin by setting forth additional material facts and the standard of review.

### A. Additional Material Facts.

¶25    At the August 27, 2019 hearing, Linsmeyer testified to the following material facts. At the Jackson Correctional Institution he is sometimes employed as a recreation worker for which he is paid twenty-six cents per hour. He has two financial accounts at the correctional institution, a general account and a release account. Ten percent of all money earned or received (for example, by gift) by Linsmeyer is deposited into Linsmeyer's release account, and all remaining money earned or received by Linsmeyer is deposited into his general account. At the time of the August 2019 hearing, the balance of Linsmeyer's general account was "maybe a couple hundred bucks," and the balance of Linsmeyer's release account was approximately $1000.

¶26    Miller's counsel requested that the circuit court order Linsmeyer to pay "$25 a month" in child support and order that the money contained in Linsmeyer's release account "be paid as child support." Linsmeyer informed the circuit court that he had "no issue paying what I can" for child support, that he would be "more than happy" to pay Miller "up to $25 per month," and that he was willing to pay a portion of the funds contained in his release account towards child support. The court ordered the following:

- "Commencing September 1, 2019, [Linsmeyer] shall pay the sum of $25.00 per month to [Miller] as and for child support"; and

- Linsmeyer "shall pay from his prison release account the following obligations:

11

> A. All of his court costs associated with this matter in the amount of $0.00.
>
> B. The balance of the funds shall be paid directly to [Miller] at her address."

## B. Standard of Review.

¶27  To determine whether a circuit court had authority to order the DOC to release funds from Linsmeyer's "release account" to pay his child support obligation, I must interpret governing statutes and administrative rules.  Like the interpretation of a statute, the interpretation of an administrative code provision presents a question of law subject to de novo review.  *State v. Dowdy*, 2012 WI 12, ¶25, 338 Wis. 2d 565, 808 N.W.2d 691 and *Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶18, 290 Wis. 2d 421, 714 N.W.2d 130.  "The purpose of statutory construction is to ascertain and give effect to the legislative intent."  *Spence v. Cooke*, 222 Wis. 2d 530, 536, 587 N.W.2d 904.  Statutory and administrative rule interpretation begins first with an examination of the pertinent language.  *Id.*  "If the statute's meaning is clear and unambiguous on its face, resort to extrinsic aids for the purpose of statutory construction is improper."  *Id.*  If the applicable language is capable of being understood by reasonably well-informed persons in two or more different ways, the language is ambiguous.  *Id.*

## C. Analysis.

¶28  Release accounts are governed by WIS. ADMIN. CODE § DOC ch. 309 (through Oct. 2020).  *See Spence*, 222 Wis. 2d at 532 n.1.  Section  DOC 309.466(1) provides for the establishment of an inmate's release account.  *Spence*, 222 Wis. 2d at 532 n.1.  That section provides that the "institution business office shall deduct 10% of all income earned by or received for the benefit of the inmate … until $5,000

12

is accumulated, and shall deposit the funds in a release account in the inmate's name."  Sec. DOC 309.466(1).

¶29    In 2009, the administrative code was amended to "expand[] the purposes for which inmate release account funds can be used" prior to an inmates release.  *See* WIS. ADMIN. CODE § DOC 309.466(2) (2009) and Emergency Rule EMR0920, https://docs.legis.wisconsin.gov/code/misc/old/emr/emr0920_rule_text /emr0920_rule_text (last visited Oct. 28, 2020).

¶30    WISCONSIN ADMIN. CODE § DOC 309.466(5) provides:  "The institution business office shall disburse release account funds in accordance with [WIS. ADMIN. CODE §] DOC 309.48."[4]  Section DOC 309.48, in turn, provides that "[e]ach institution shall set forth in writing a procedure whereby inmates may request the disbursement of funds."

¶31    Policy No. 309.45.02 of the Division of Adult Institutions sets forth the DAI's policy and procedures on "Inmate Trust System Deductions."  (*See* DAI policy    No. 309.45.02    (eff.    Apr. 4,    2016),    available    at https://doc.wi.gov/DepartmentPoliciesDAI/3094502.pdf    (last    visited    Oct. 28, 2020).  Of relevance here is section V, which sets forth the DAI's policy on a non-custodial parent's child support obligation (Linsmeyer is a non-custodial parent).  Subsection A of section V provides:  "When the Order/Notice to Withhold Income form is received from a county child support agency, facilities shall establish a child support deduction to be taken from *all* inmate monies, except VA benefits, unless the Order/Notice to Withhold Income specifically states that deductions will be

---

[4]  Separate from WIS. ADMIN. CODE § DOC 309.466, under the Prisoner Litigation Reform Act, 1997 Wis. Act 133, release account funds are available to pay fees and costs of litigation, including filing fees, *see* **Spence v. Cooke**, 222 Wis. 2d 530, 537, 587 N.W.2d 904 (Ct. App. 1998), and the fee for preparation of transcripts, *see* **State ex rel. Akbar v. Kronzer**, 2004 WI App 108, ¶4, 273 Wis. 2d 749, 681 N.W.2d 280 (per curiam).  That Act is not at issue here.

taken only from inmate wages." No. 309.45.02, § V(A) (emphasis added). Subsection B of section V states:

> The [Department of Children and Families] establishes the process used by courts to determine what amount of child support should be ordered.
>
> 1. In making that determination, the courts look closely at what the non-custodial parent is earning as gross income.
>
> 2. WISCONSIN STAT[.] [§] 767.75 controls how or from what sources the DOC collects child support.
>
> 3. This statute states that each order for child support or spousal support "constitutes an assignment of all commissions, earnings, salaries, wages, pension benefits, benefits under Ch. 102 or 108, lottery prizes that are payable in installments, and other money due or to be due in the future to the department or its designee." (small capitalization added).

No. 309.45.02, § V(B). Subsection C of section V in turn provides:

> The DCF, which collects the child support on behalf of the child or custodial parent, interprets [the quoted language of WIS. STAT. § 767.75 in subsection B] to mean that any money from any source, including gifts that are paid or payable to the non-custodial parent would constitute money due to DCF if that non-custodial parent owes child support. Therefore, if the non-custodial parent owes child support, the DOC can deduct money from any source (other than refunds and ICRS reimbursements) for purposes of collecting the amount ordered, unless the order specifically states that support only be withheld from inmate wages.

No. 309.45.02, § V(C).

¶32 Under the statutory analysis in DAI policy No. 309.45.02, § V(A)-(C), child support can be deducted from *any funds*, except VA benefits, belonging to the non-custodial inmate. Wisconsin law does not restrict deductions for child support to be made from those funds deposited in the inmate's general account, and Linsmeyer does not, in any statutory analysis, assert otherwise.

14

¶33   Linsmeyer refers this court to a number of cases in support of his contention that funds in a release account cannot be disbursed to pay an inmate's child support obligation.  *See Parker v. Parker*, 152 Wis. 2d 1, 447 N.W.2d 64 (1989); *Richards v. Cullen*, 150 Wis. 2d 938, 442 N.W.2d 574 (Ct. App. 1989); and *State ex rel. Steldt v. McCaughtry*, 2000 WI App 176, ¶15, 238 Wis. 2d 393, 617 N.W.2d 201.  However, those cases either predate the 2009 amendment to WIS. ADMIN. CODE § DOC 309.466 or are inapposite of the issue here.  Linsmeyer also points to Attachment A to DAI policy No. 309.45.02 and asserts that the purposes listed in that document are the "only" permissible purposes for which release funds may be disbursed.  Attachment A lists purposes for which inmate release funds may be used.  *See* No. 309.45.02(IX)(B) and Attachment A, available at https://doc.wi.gov/Pages/AboutDOC/DepartmentPolicies/DAIPolicies.aspx   (last visited Oct. 28, 2020).  However, nothing in the policy indicates that the purposes listed in Attachment A are exhaustive, and nothing in the policy states that funds cannot be deducted from a release account for child support.

¶34   Accordingly, I conclude that the circuit court had authority to order funds be deducted from Linsmeyer's release account for child support.

## CONCLUSION

¶35   For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

15